Wilfred E. **WATKINS**, M.D., Plaintiff,

v.

**MERCY MEDICAL CENTER** et al.,
Defendants.

Civ. No. 1–73–17.

United States District Court,
D. Idaho.

July 30, 1973.

As Amended Oct. 23, 1973.

Leon R. Weeks, Weeks & Yost, Nampa, Idaho, for plaintiff.

Roger L. Williams, Schiller, Williams & Trabert, Chartered, Nampa, Idaho, J. Dennis Faucher, Elam, Burke, Jeppesen,

Evans & Boyd, Boise, Idaho, for defendants.

## MEMORANDUM DECISION AND ORDER

J. BLAINE ANDERSON, District Judge.

The plaintiff brought this action for injunctive and compensatory relief against the defendant hospital and its Board of Directors, contending that he had been denied medical staff privileges for failure to agree to, or abide by, the ethical or religious directives under the Code of Ethics for Catholic Hospitals as required by the application of any physician for staff privileges within the hospital, and that such a denial was a violation of his right to freedom of religion and due process of law. Recent congressional action concerning the subject matter of this suit and review of the evidence herein viewed in the light thereof convinces the Court that the plaintiff's claim is without merit.

Briefly, the facts as stipulated are that Dr. Watkins was denied reappointment to the medical staff at Mercy Hospital Center for failure to submit a proper application, reappointment to the staff coming on an annual basis. In his application of December 1, 1973, Dr. Watkins wrote an exclusion to his agreement to abide by the By-Laws of the Medical Staff of Mercy Medical Center so as to exclude the Ethical and Religious Directives for Catholic Health Care Facilities. Upon review by the Credentials Committee and the Executive Committee of the Medical Staff and the hospital Board of Directors, his application was rejected. Dr. Watkins re-submitted an identical application which was also rejected for his refusal to comply with the Ethical and Religious Directives. His staff privileges thereafter expired on February 1, 1973. Dr. Watkins refused to comply with or agree to the Ethical and Religious Directives because they prohibit staff physicians from performing voluntary or involuntary vasectomies or other sterilization or abortion operations in a hospital setting. These procedures are prohibited solely for religious reasons as the hospital is financed and operated almost entirely by the Catholic Church. On the record it is admitted that Dr. Watkins is in all other respects, training, experience and ethically, qualified for staff privileges. It should be noted that there are approximately 5 hospitals within 50 miles of the Mercy Hospital which do permit all of the procedures under discussion here. Dr. Watkins, therefore, submits that his dismissal for failure to agree to or comply with the directives denies him of his own religious beliefs and his right to practice medicine without due process of law and he requests injunctive relief reinstating his staff privileges, as well as praying for general damages of $100,000.00.

The meagre evidence adduced by Dr. Watkins would not support any monetary relief against defendants.

Dr. Watkins has alleged jurisdiction in this Court to hear this matter on the basis of 28 U.S.C. § 1343(3),[1] contending defendants have deprived him of his constitutional rights in violation of 42 U.S.C. § 1983,[2] and also alleged jurisdiction under 28 U.S.C. § 1331[3] and 42 U.

---

[1]. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

[2]. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[3]. (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and

S.C. § 2000d.[4]  For reasons more fully developed in this opinion, this Court feels Dr. Watkins is not entitled to the relief which he requests.

In order to state a claim for relief under 42 U.S.C. § 1983, it must be shown that Mercy Medical Center and its Board of Directors were acting under color of State law when they denied Dr. Watkins staff privileges.  In other words, it must be determined that the enforcement of the hospital's rule requiring conformity by the medical staff to the directives which prohibit contraceptive procedures was an act done under color of State law.  Since the hospital itself is otherwise a private hospital and not owned or operated by any arm of the state, the only means by which it could be said to act under color of law is if the hospital is sufficiently affected by state law and regulation and administration of federal funds by the state as to be considered acting under color of law.

Mercy Medical Center was constructed with the help of Federal Hill-Burton Act funds.[5]  It has been held that hospitals which receive Hill-Burton funds are affected with state action.  Sams v. Ohio Valley General Hospital Association, 413 F.2d 826 (4th Cir. 1969); Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (D.C.Pa.1970); Taylor v. St. Vincent's Hospital, Civ. No. 1090, D.C.Mont., Oct. 31, 1972.  However, recent congressional action has effectively revoked the ability of a court to find state action on the part of a hospital which receives Hill-Burton Act funds.

On June 18, 1973, the President signed into law the Health Programs Extension Act of 1973.  Title IV, Sec. 401 of that Act, provides in part:

"(b) The receipt of any grant, contract, loan, or loan guarantee under the Public Health Service Act, the Community Mental Health Centers Act, or the Developmental Disabilities Services and Facilities Construction Act by any individual or entity does not authorize any court or any public official or other public authority to require—

(2) such entity to—

(A) make its facilities available for the performance of any sterilization procedure or abortion if the performance of such procedure or abortion in such facilities is prohibited by the entity on the basis of religious beliefs or moral convictions
. . . "

P.L. 93–45; 87 Stat. 91, § 401(b).

By its plain language this Act prohibits any court from finding state action on the part of a hospital which receives Hill-Burton funds and using that finding as a basis for requiring the hospital to make its facilities available for the performance of sterilization procedures or abortions.  The above sections were specifically aimed at such a result as evidenced by the legislative history.  See H.R. No. 93–227; 1973 U.S.Code Congressional and Administrative News, pp. 1553 and 1557.[6]  In essence, what Dr.

---

costs, and arises under the Constitution, laws, or treaties of the United States.

4. No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

5. Title IV of the Public Health Services Act; 42 U.S.C. § 291 et seq.

6. The "Purpose of Proposed Legislation," p. 1553, dealing with the "conscience amendment" to the Health Programs Extension Act of 1973, speaks directly to the point:

"The background for subsection (b) of section 401 of the bill is an injunction issued in November 1972 by the United States District Court for the District of Montana in Taylor v. St. Vincents Hospital.  The court enjoined St. Vincents Hospital, located in Billings, Montana, from prohibiting Mrs. Taylor's physician from performing in that hospital a sterilization procedure on her during the delivery of her baby by Caesarian section.

"The suit to enjoin the hospital was brought under 42 U.S.C. 1983 (which authorizes civil actions for redress of deprivation of civil rights by a person acting under

Watkins has asked this Court to do is require Mercy Medical Center to make its facilities available for the performance of sterilization procedures by way of requiring his reinstatement to the medical staff. The above language of the Health Programs Extension Act of 1973 clearly prohibits such a course of action.

■ Neither does the fact that Mercy Medical Center receives tax exempt status from the state, is licensed by the state and applies for and receives state and federal monies under the Medicare and Medicaid programs, support a finding that the hospital is sufficiently clothed with state control so as to be acting under color of state law. The state has exacted no conditions upon the hospital concerning sterilization or abortion in order to receive tax benefits or state or federal money. The state regulations which the hospital must conform to in no way relate to its policy concerning sterilization or abortions. Since hospital policy is not and has not been affected by the benefits bestowed upon it by the state, defendants were not acting under color of state law when the policy was formulated or enforced. Doe v. Bellin, 479 F.2d 756 (7th Cir. 1973); Ham v. Holy Rosary Hospital, U.S.D. C., Mont. Dec. 20, 1972, # 1103. Therefore, Dr. Watkins has not stated a claim for relief under 42 U.S.C. § .1983. Chism v. Price, 457 F.2d 1037 (9th Cir. 1972).

■ However, despite supporting a finding that defendants were not acting under color of state law, the Health Programs Extension Act is not without the characteristics of a double-edged sword. Title IV of the Act further provides that:

"(c) No entity which receives a grant, contract, loan, or loan guarantee under the Public Health Service Act, the Community Mental Health Centers Act, or the Developmental Disabilities Services and Facilities Construction Act after the date of enactment of this Act may—  . . .

(2) discriminate in the extension of staff or other privileges to any physician or other health care personnel, because he performed or assisted in the performance of a lawful sterilization procedure or abortion, because he

---

color of law) and 28 U.S.C. 1343 (which grants United States district courts jurisdiction of actions (authorized by another law) to redress deprivation, under color of any State law, of a Constitutional right). In ruling on a motion to dismiss for lack of jurisdiction, the court stated that 'the fact that the defendant [St. Vincents Hospital] is the beneficiary of the receipt of Hill-Burton Act [title VI of the Public Health Service Act] funds is alone sufficient to support an assumption of jurisdiction. . . . ' The court also found two other factors (state licensing and tax immunity) that established a connection between the hospital and the State sufficient to support jurisdiction.

"Subsection (b) of 401 would prohibit a court or a public official, such as the Secretary of Health, Education, and Welfare, from using receipt of assistance under the three laws amended by the bill (the Public Health Service Act, the Community Mental Health Centers Act, and the Developmental Disabilities Services and Facilities Construction Act) as a basis for requiring an individual or institution to perform or assist in the performance of sterilization procedures or abortions, if such action would be contrary to religious beliefs oι moral conviction.

"In recommending the enactment of this provision, the Committee expresses no opinion as to the validity of the *Taylor* decision."

The "Section-by-Section Analysis" under the item "Miscellaneous", pp. 1557–58, succinctly states congressional purpose as follows:

"In addition, section 401 of the bill provides that receipt of financial assistance under any of the aforementioned Acts does not constitute legal basis for a judicial or administrative order requiring an individual to aid in performing a sterilization or abortion, if such activity is contrary to the individual's religious or moral beliefs. Nor does receipt of financial assistance provide legal authority for a judicial or administrative order requiring the provision of personnel or facilities by any entity for the performance of sterilization or abortion, if such activity is contrary to the religious or moral beliefs of the personnel or prohibited by the entity for religious or moral reasons."

refused to perform or assist in the performance of such a procedure or abortion on the grounds that his performance or assistance in the performance of the procedure or abortion would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting sterilization procedures or abortions."

P.L. 93–45; 87 Stat. 91, § 401(c).

Congress has taken the position that the fact a hospital receives Hill-Burton funds does not authorize a finding that the hospital acts under color of state law as a basis for requiring it to make its facilities available for the performance of sterilization procedures or abortions if the hospital declines for religious or moral reasons. But, at the same time, the hospital cannot discharge a staff member who religiously or morally believes that such services should be performed. The legislation is aimed at protecting the religious rights of both the hospital and the individual. The hospital can prohibit its staff from performing sterilization procedures or abortions in the hospital, but it cannot require its staff to adhere to the religious or moral beliefs which support the hospital's policy as a condition of employment or extension of privileges.

In this case Mercy Medical Center, by way of its application for staff privileges, was requiring Dr. Watkins to agree not to perform sterilization services in the hospital. The hospital was not trying to require Dr. Watkins to adopt their religious beliefs, for he is free to believe that sterilization services should be offered and performed, but the hospital also has the right to believe that such services should not be performed and the right to prohibit the use of its facilities for those purposes.

▇▇ By similar analysis, Dr. Watkins' general constitutional claim that defendants have violated his First and Fourteenth Amendment rights is without merit. It is unquestioned that the prohibition against the establishment of,

or prevention of, the free exercise of religion is wholly applicable to the states through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). But in order to support a claim that Dr. Watkins has been denied the right to freely exercise his religious beliefs or that he had been denied due process of law, he must show some significant state involvement in the activity that allegedly has violated his rights. United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Martin v. Pacific Northwest Bell Tel. Co., 441 F.2d 1116 (9th Cir. 1971). For the reasons previously stated in this opinion, the Court is of the belief that there was not state action in this matter.

Plaintiff's claim under 42 U.S.C. § 2000d is without merit also. Assuming that Dr. Watkins was discriminated against on the basis of his religious beliefs, that section speaks only in terms of racial discrimination.

▇ In conclusion, even assuming the requisite state action in this matter to support a claim for relief under 42 U.S. C. § 1983 or the Fourteenth Amendment, the Court feels it must emphasize that Mercy Medical Center has the right to adhere to its own religious beliefs and not be forced to make its facilities available for services which it finds repugnant to those beliefs. The hospital cannot discriminate against those who believe otherwise, but it can set up reasonable safeguards to insure that others do not use their facilities for services which the hospital does not religiously believe should be offered. Dr. Watkins is free to believe that sterilization services should be provided for the public and to perform them anywhere he is able. However, he cannot force Mercy Medical Center to allow him to perform them in its hospital. To hold otherwise would violate the religious rights of the hospital.

It is, therefore, ordered that the plaintiff's request for both preliminary and

permanent injunction against defendants be, and the same is hereby, denied, and that the plaintiff take nothing by his complaint against the defendants. No costs are allowed.

If counsel so stipulate in writing filed with the Clerk, this Memorandum shall constitute the Findings of Fact and Conclusions of Law and defendants' counsel will submit an appropriate proposed judgment. If not so agreed, defendants' counsel will make the submissions required by Local Rule 18.