James Michael **TAYLOR** and Gloria Jeane Taylor, husband and wife, on behalf of themselves, Individually, and on behalf of others who may be members of a class of persons similarly situated, Plaintiffs,

v.

**ST. VINCENT'S HOSPITAL**, a Montana corporation, Defendant.

Civ. No. 1090.

United States District Court,
D. Montana,
Billings Division.

Oct. 26, 1973.

Robert L. Stephens, Jr., Robert L. Kelleher, Billings, Mont., for plaintiffs.

Stephen H. Foster and Gareld F. Krieg, Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for defendant.

## OPINION AND ORDER

BATTIN, District Judge.

The parties have agreed that the court may render a decision in this cause

without a trial, based upon the stipulated facts which appear in the court's final pre-trial order. Those pertinent facts may be summarized as follows:

St. Vincent's Hospital is a private corporation which operates a hospital facility in Billings, Montana, known as St. Vincent's Hospital. It has done so since May 1, 1972, when it took over the operation of the hospital from the Sisters of Charity of Leavenworth, also a private corporation, whose members are all members of a religious order of that name. The physical facilities of St. Vincent's Hospital are now and at all times material in this case have been owned by the Sisters of Charity of Leavenworth, a corporation.

As a private, charitable, non-profit corporation, St. Vincent's Hospital received certain tax benefits from the State of Montana. The Sisters of Charity of Leavenworth, a corporation, when it operated St. Vincent's Hospital, also applied for and received funds under the Hill-Burton Act (42 U.S.C. §§ 291–291 (c)) during the years 1956 through 1963.

Tubal ligation as a sterilization procedure had not, prior to the preliminary injunction issued by this court in this cause, been performed at St. Vincent's Hospital because of the interpretation placed upon the publication entitled "Ethical and Religious Directives for Catholic Hospitals" which is incorporated by reference in the By-laws of the medical staff of St. Vincent's Hospital. The Bishop of Eastern Montana of the Roman Catholic Church has the responsibility to interpret the directives for members of the Church of Eastern Montana, including members of the congregation of the Sisters of Charity of Leavenworth who are on the Board of Directors or are employed at St. Vincent's Hospital. The Preamble in the "Ethical and Religious Directives" makes it clear that they are based upon moral convictions.

St. Vincent's Hospital and Billings Deaconess Hospital are the only hospitals in Billings, Montana. In June, 1972, the maternity departments of the two hospitals were combined in St. Vincent's Hospital, and an intensive care nursery was constructed in St. Vincent's Hospital in order to reduce infant mortality in the community and to reduce the cost to the community of duplicated maternity services. Prior to approving consolidation of maternity services at St. Vincent's Hospital, the Trustees of Sisters of Charity of Leavenworth advised local obstetricians and trustees of the Billings Deaconess Hospital that surgical sterilizations would not be allowed at St. Vincent's Hospital. The consolidation was completed and the combined maternity department with intensive care facilities opened in June, 1972.

The plaintiffs, James and Gloria Taylor, are a married couple who were expecting a second child to be delivered by Caesarian section on October 31, 1972. The couple decided that they wished Mrs. Taylor to be sterilized by tubal ligation at the time of the Caesarian section and requested permission of St. Vincent's Hospital for the procedure. Permission was denied.

Plaintiffs allege in their complaint that the defendant in refusing to permit Mrs. Taylor to undergo a tubal ligation at the time of her Caesarian delivery infringed certain rights guaranteed to the plaintiff by the United States Constitution. The plaintiffs further allege that the infringement was committed under color of state law. The prayer asked for injunctive relief, not only for the Taylors, but also for "other persons similarly situated in the State of Montana."

■ The plaintiffs seek to invoke the jurisdiction of this court under the provisions of 42 U.S.C. § 1983 and 28 U.S.C. § 1343. 42 U.S.C. § 1983 reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

28 U.S.C. § 1343 reads in pertinent part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * *

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; * * *."

Essential to the plaintiffs' invocation of jurisdiction in this cause is that the defendant, in its alleged violation of the plaintiffs' constitutional rights, acted under color of state law. The plaintiffs' assertion that the defendant is acting under the color of state law is grounded primarily on the fact that Hill-Burton grants have been used to defray a portion of the cost of hospital remodeling and construction over the years. In fact, this court, in its order dated October 27, 1972, found jurisdiction in this cause because of the receipt of such funds by the defendant.

However, on June 18, 1973, the President signed into law the Health Programs Extension Act of 1973. Title IV, Section 401, of that Act, provides in part:

"(b) The receipt of any grant, contract, loan, or loan guarantee under the Public Health Service Act, the Community Mental Health Centers Act, or the Developmental Disabilities Services and Facilities Construction Act by any individual or entity does not authorize any court or any public official or other public authority to require— * * *

"(2) such entity to—

"(A) make its facilities available for the performance of any sterilization procedure or abortion if the performance of such procedure or abortion in such facilities is prohibited by the entity on the basis of religious beliefs or moral convictions . . . ."

Public Law 93–45; 87 Stat. 91, Section 401(b).

By its plain language, this Act prohibits any court from finding that a hospital which receives Hill-Burton funds is acting under color of state law. The above sections were specifically aimed at such a result as evidenced by the legislative history.[1]

1. See H.R. No. 93–227; 1973 U.S.Code Cong. & Admin.News p. 1553. The latter includes the following language:

"The background for subsection (b) of section 401 of the bill is an injunction issued in November 1972 by the United States District Court for the district of Montana in Taylor v. St. Vincents Hospital. The court enjoined St. Vincents Hospital, located in Billings, Montana, from prohibiting Mrs. Taylor's physician from performing in that hospital a sterilization procedure on her during the delivery of her baby by Caesarian section.

"The suit to enjoin the hospital was brought under 42 U.S.C. 1983 (which authorizes civil actions for redress of deprivation of civil rights by a person acting under color of law) and 28 U.S.C. 1343 (which grants United States district courts jurisdiction of actions (authorized by another law) to redress deprivation, under color of any State law, of a Constitutional right). In ruling on a motion to dismiss for lack of jurisdiction, the court stated that 'the fact that the defendant [St. Vincents Hospital] is the beneficiary of the receipt of Hill-Burton Act [title VI of the Public Health Service Act] funds is alone sufficient to support an assumption of jurisdiction. . . .' The court also found two other factors (state licensing and tax immunity) that established a connection between the hospital and the State sufficient to support jurisdiction.

"Subsection (b) of 401 would prohibit a court or a public official, such as the Secretary of Health, Education, and Welfare, from using receipt of assistance under the three laws amended by the bill (the Public

In a recent memorandum filed in this action, the plaintiffs attack the Constitutionality of Section 401(b). Specifically, the plaintiffs launch a direct attack upon this section as being contrary to the establishment clause of the First Amendment. However, the question of the Constitutionality of that section is not before this court. Furthermore, the case law relied upon by plaintiffs relates to parochial schools and is distinguishable from the instant case.

■ Nor does Section 401(b) present any question of retroactive application. It simply limits the remedies the court may grant. It can only affect pending and future court proceedings and does not purport to affect cases in which judgments have become final. Moreover, there is nothing in Section 401(b) to suggest that it applies only in situations where receipt of the public fund occurred after the effective date of the Act. To apply Section 401(b) in such a way would produce the bizarre result that hospitals which have received Hill-Burton funds prior to June 18, 1973, could be forced to permit sterilizations, while those which received such funds after June 18, 1973, could not. This was not the Congressional intent.

■■ Furthermore, there can be no doubt that Section 401(b) which restricts the course and power of inferior federal courts is a valid exercise of Congressional power. Under Article III of the Constitution, Congress can establish such inferior courts as it choses. Its power to create those courts includes the power to invest them with such jurisdiction as it deems appropriate for the public. Lockerty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943). Further, Congress is free to legislate with respect to remedies the inferior Federal courts may grant. Aetna Life

Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

For the foregoing reasons, it is hereby ordered that the plaintiffs be denied all relief.

It is further ordered that the preliminary injunctive relief issued by this court on October 27, 1972, is dissolved.

Health Service Act, the Community Mental Health Centers Act, and the Developmental *Disabilities Services and Facilities Construction Act*) as a basis for requiring an individual or institution to perform or assist in the performance of sterilization procedures or abortions, if such action would be contrary to religious beliefs or moral conviction.

"In recommending the enactment of this provision, the Committee expresses no opinion as to the validity of the *Taylor* decision.".