Barbara Ann CHRISMAN,
Plaintiff-Appellant,

v.

SISTERS OF ST. JOSEPH OF PEACE,
an Oregon Corporation doing business
as Sacred Heart General Hospital et
al., Defendants-Appellees.

No. 72–3087.

United States Court of Appeals,
Ninth Circuit.

Nov. 21, 1974.

Charles O. Porter (argued), Eugene, Or., for plaintiff-appellant.

Frank E. Nash (argued), King, Miller, Anderson, Nash & Yerke, Portland, Or., for defendants-appellees.

Before WRIGHT and SNEED, Circuit Judges, and JAMESON, District Judge.*

* Of the District of Montana.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

In deciding this appeal, we hold that the district court correctly dismissed an action under 42 U.S.C. § 1983[1] and 28 U.S.C. § 1343[2] for declaratory judgment, equitable relief and damages brought against a private hospital because of its refusal to permit sterilization of a woman patient. We dispose of the matter on jurisdictional grounds and need not consider all issues raised by the plaintiff-appellant.

The action was instituted by a 23-year old married woman against the defendants who do business as Sacred Heart General Hospital in Eugene, Oregon. Also joined were the hospital administrator and physicians who were members of the hospital's sterilization committee. It was alleged that the denial of the request of the plaintiff for a tubal ligation following birth of her second child was motivated primarily by religious beliefs. After Sacred Heart Hospital refused permission, the plaintiff had been transported across the city to the Eugene Hospital where the surgery was performed. The defense asserted that refusal at Sacred Heart Hospital was based on good medical practice and not religious reasons.[3]

The trial judge before whom the cause was tried empaneled a jury to decide by special verdict the question whether the denial of sterilization was motivated primarily by medical or religious considerations. The jury being unable to reach a verdict, the trial judge entertained and granted a defense motion for judgment of dismissal pursuant to Rule 50(b), Fed. Rules Civ.Proc.[4] We affirm, concluding that dismissal was proper since the court lacked jurisdiction to grant the relief sought by the plaintiff.

The complaint for equitable relief was properly dismissed for three reasons: (a) the district court lacked power to compel the defendants to do a sterilization procedure in their hospital, (b) the defendants' alleged actions were not taken under "color of state law," as required by 28 U.S.C. § 1343, and (c) the issue is mooted by the plaintiff's having had her tubal ligation elsewhere.

1. 42 U.S.C. § 1983:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. 28 U.S.C. § 1343:

   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
   4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

3. Note also that the stipulation of the parties # 30, C.R. 374, states:

   Defendant physician members of the Sterilization Committee of the medical staff did not consider it to be good medical practice to perform abdominal surgery under a general anesthetic to accomplish the irreversible sterilization of a 23 year old female who has one child, is pregnant and in good health with no substantial medical, surgical, obstetric, gynecological or psychological indications.

4. The judge stated (appellant's brief, p. 5):

   [T]he evidence predominates so heavily in favor of the decision having been one of a medical decision and not based on religious beliefs, [the court] will grant the motion for directed verdict, based on the evidence as recited by the court, and on the further grounds as recited in the defendants' memorandum.

## I.

## POWER TO GRANT EQUITABLE RELIEF

Appellant's claim for writ of mandamus and injunction was based on her assertion that the defendants acted under color of state law since the hospital received so-called Hill-Burton construction funds,[5] enjoyed some state tax exemption and was generally under state regulation.

■ But this argument has been seriously limited by action of Congress to prohibit courts from using receipt of Hill-Burton funds as the basis for compelling an individual or hospital to perform any sterilization procedure if the performance of such procedure is prohibited by the hospital on the basis of religious beliefs or moral convictions.[6] Section 401(b) was clearly intended by Congress to prevent suits such as that advanced by Appellant.[7] In Taylor v. St. Vincent's Hospital, 369 F.Supp. 948, 950 (D.Mont.1973), the court held in a case in which the defendant hospital had refused on religious grounds to perform a sterilization, "By its plain language,

5. Stipulation of the parties No. 5, C.R. 357, listed the hospital as having received, since 1961, $691,913 in Hill-Burton funds and $369,537 of HEW funds, as part of a total construction budget of $8,035,241. Public funds thus accounted for approximately 13 percent of the total.

6. Health Programs Extension Act of 1973, Pub.L. 93–45, Title IV, § 401(b), 87 Stat. 95:

The receipt of any grant, contract, loan, or loan guarantee under the Public Health Service Act, the Community Mental Health Centers Act, [or the Developmental Construction Act,] or the Developmental Disabilities Service and Facilities Construction Act by any individual or entity does not authorize any court or any public official or other public authority to require—

(2) such entity to—

(A) make its facilities available for the performance of any sterilization procedure or abortion if the performance of such procedure or abortion in such facilities is prohibited by the entity on the basis of religious beliefs or moral convictions.

7. 1973 U.S.Code Congressional and Administrative News, p. 1473.

The background for subsection (b) of section 401 of the bill is an injunction issued in November 1972 by the United States District Court for the District of Montana in Taylor v. St. Vincent's Hospital. The court enjoined St. Vincent's Hospital, located in Billings, Montana, from prohibiting Mrs. Taylor's physician from performing in that hospital a sterilization procedure on her during the delivery of her baby by Caesarian section.

The suit to enjoin the hospital was brought under 42 U.S.C. 1983 (which authorizes civil action for redress of deprivation of civil rights by a person acting under color of law) and 28 U.S.C. 1343 (which grants United States district courts jurisdiction of actions (authorized by another law) to redress deprivation, under color of any State law, of a Constitutional right). In ruling on a motion to dismiss for lack of jurisdiction, the court stated that "the fact that the defendant [St. Vincents Hospital] is the beneficiary of the receipt of Hill-Burton Act [title VI of the Public Health Service Act] funds is alone sufficient to support an assumption of jurisdiction. . . ." The court also found two other factors (state licensing and tax immunity) that established a connection between the hospital and the State sufficient to support jurisdiction.

Subsection (b) of 401 would prohibit a court or a public official, such as the Secretary of Health, Education, and Welfare, from using receipt of assistance under the three laws amended by the bill (the Public Health Service Act, the Community Mental Health Centers Act, and the Developmental Disabilities Services and Facilities Construction Act) as a basis for requiring an individual or institution to perform or assist in the performance of sterilization procedures or abortions, if such action would be contrary to religious beliefs or moral conviction.

*Supra* at 1477:

In addition, section 401 of the bill provides that receipt of financial assistance under any of the aforementioned Acts does not constitute legal basis for a judicial or administrative order requiring an individual to aid in performing a sterilization or abortion, if such activity is contrary to the individual's religious or moral beliefs. Nor does receipt of financial assistance provide legal authority for a judicial or administrative order requiring the provision of personnel or facilities by any entity for the performance of sterilization or abortion, if such activity is contrary to the religious or moral beliefs of the personnel or prohibited by the entity for religious or moral reasons.

this Act prohibits any court from finding that a hospital which receives Hill-Burton funds is acting under color of state law." *See also* Watkins v. Mercy Medical Center, 364 F.Supp. 799 (D.Idaho 1973).

█ It has long been held that Congress has the power to modify and alter the jurisdiction which it has conferred on inferior courts of the United States. Cary v. Curtis, 44 U.S. (3 How.) 236, 11 L.Ed. 376 (1844).

The Supreme Court has consistently upheld restrictions placed on the ability of the inferior courts to issue injunctive relief with respect to designated causes of action. In Lauf v. E. G. Shinner & Co., 303 U.S. 323, 330, 58 S.Ct. 578, 582, 82 L.Ed. 872 (1938), the Court upheld a limitation on the power of the district courts to grant injunctions in labor disputes: "There can be no question of the power of Congress thus to define and limit the jurisdiction of the inferior courts of the United States" citing Kline v. Burke Construction Co., 260 U.S. 226, 233, 43 S.Ct. 79, 67 L.Ed. 226 (1922).[8]

Appellant argues that § 401(b) is constitutionally infirm as a violation of the Establishment Clause. The contention lacks merit. Plaintiff fails to distinguish between action taken to preserve the "government['s] neutrality in the face of religious differences"[9] and action which affirmatively prefers one religion over another.[10]

Here Congress sought to retain its neutrality in the debate over the morality of voluntary sterilizations by preventing the reception of federal health program funds from being used as a basis for compelling a hospital to perform such surgery against the dictates of its religious or moral beliefs. In Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the Supreme Court held that South Carolina could not require, as a condition of receiving unemployment benefits, that a Seventh-Day Adventist submit herself for employment which required her to work on Saturdays in violation of her religious beliefs. The Court stated that:

> In holding as we do, plainly we are not fostering the "establishment" of the Seventh-day Adventist religion in South Carolina, for the extension of unemployment benefits . . . reflects nothing more than the government obligation of neutrality in the face of religious differences.

*Sherbert, supra* at 409, 83 S.Ct. at 1797. The Court also noted that "It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege," at 404, 83 S.Ct. at 1794.

The Court has recognized the danger that government action might "run afoul of the Establishment Clause" but has stressed that this

> . . . danger cannot be allowed to prevent any exception no matter how vital it may be to the protection of values promoted by the right of free exercise. By preserving doctrinal flexibility and recognizing the need for a sensible and realistic application of the Religion Clauses "we have been able to chart a course that preserved the autonomy and freedom of religious bodies while avoiding any semblance

---

**8.** *See also* Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Lockerty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943): "The Congressional power to ordain and establish inferior courts includes the power 'of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for

the public good,'" [citation omitted]; Eldridge v. Richfield Oil Corp., 364 F.2d 909 (9th Cir. 1966), cert. denied, 385 U.S. 1020, 87 S.Ct. 750, 17 L.Ed.2d 556 (1967).

**9.** Sherbert v. Verner, 374 U.S. 398, 409, 83 S.Ct. 1790, 1797, 10 L.Ed.2d 965 (1963).

**10.** Everson v. Board of Education, 330 U.S. 1, 15, 67 S.Ct. 504, 91 L.Ed. 711 (1947).

of established religion." [Citation omitted.] [11]

Wisconsin v. Yoder, 406 U.S. 205, 221, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15 (1972).

Here Congress quite properly sought to protect the freedom of religion of those with religious or moral scruples against sterilizations and abortions. The need of denominational hospitals for such protection was recognized in Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). In striking down the Georgia criminal abortion statute, the Court ruled that a mandatory abortion screening committee was not required as a means of protecting the rights of individual physicians and denominational hospitals, since their religious and moral beliefs were protected by Georgia laws which permitted them to refuse to perform abortions:

> And the hospital itself is otherwise fully protected. Under [Georgia law] the hospital is free not to admit a patient for an abortion. It is even free not to have an abortion committee. Further a physician or any other employee has a right to refrain, for moral or religious reasons, from participating in the abortion procedure. These provisions obviously are in the statute *in order to afford appropriate protection to the individual and to the denominational hospital.* (Emphasis added.)

Doe v. Bolton, 410 U.S. at 197–198, 93 S.Ct. at 750.

Similarly, the court in Watkins v. Mercy Medical Center, *supra,* held that § 401(b) properly permitted denominational hospitals to refuse to perform sterilizations since "To hold otherwise would violate the religious rights of the hospital." 364 F.Supp. at 803. In Doe v. Bellin Memorial Hospital, 479 F.2d 756,

759–760 (7th Cir. 1973), the court held that "There is no constitutional objection to the decision by a purely private hospital that it will not permit its facilities to be used for the performance of abortions."

However, application of § 401(b) does not dispose of this issue since appellant cites, in addition, the enjoyment by the hospital of tax exemptions, its regulation by the state and its performance of a public function as grounds for holding that it acted under color of state law with respect to 42 U.S.C. § 1983.

## II.

## COLOR OF STATE LAW

To state a cause of action under § 1983, it is essential that the defendant has acted under color of state law, Adickes v. S. H. Kress & Co., 398 U.S. 144, 188, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (Brennan, J., concurring opinion). There is no "precise formula" for determining the threshold at which the reception of aid or regulation by the state cloaks private actions with the color of state law, Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). However, under the decisions of this circuit, it seems clear that the involvement of the state in the actions of these defendants does not rise to the level of significance required to state a cause of action under § 1983.

Here, the defendants received since 1961 approximately 13 percent of their construction funds from the state and from federal agencies. Additionally, they were licensed by the state but were not compelled by state regulations to perform sterilizations on request.

---

11. *See also* Tilton v. Richardson, 403 U.S. 672, 679, 91 S.Ct. 2091, 2096, 29 L.Ed.2d 790 (1971): "The simplistic argument that every form of financial aid to church-sponsored activity violates the Religion Clauses was rejected long ago in Bradfield v. Roberts, 175 U.S. 291, 20 S.Ct. 121, 44 L.Ed. 168 (1899). . . . The crucial question is not whether some benefit accrues to a religious institution as a consequence of the legislative program, but whether its principal or primary effect advances religion." *and* Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

Action under § 1983 has been permitted only when there has been significant involvement of the state in the specific activity complained of. In holding that the provision of a liquor license and "pervasive" regulation of private clubs did not convert private discrimination into "state" action, the Supreme Court in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972), held that

> Our holdings indicate that where the impetus for the discrimination is private, the State must have "significantly involved itself with invidious discriminations," . . . in order for the discriminatory action to fall within the ambit of the constitutional prohibition.

The Court rejected the argument that state regulations which were not involved in supporting or compelling the racial discrimination supported a claim of state action:

> However detailed this type of regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination. Nor can it be said to make the State in any realistic sense a partner or even a joint venturer in the club's enterprise.

*Moose Lodge, supra* at 176–177, 92 S.Ct. at 1973.

In Martin v. Pacific Northwest Bell Telephone Co., 441 F.2d 1116, 1118 (9th Cir. 1971), we stated that:

> [T]he violation of such constitutional rights is actionable, under federal law, only when committed by one who is "clothed with the authority of the state and . . . purporting to act thereunder." Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962).

Moreover, "[A]s well stated in Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968), 'the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury.'" *Martin, supra* at 1118, of 441 F.2d.

Similarly, in Adams v. Southern California First National Bank, 492 F.2d 324, 330 (9th Cir. 1974), we held that "[O]ne essential element for taking action under color of law is that the person act 'with the knowledge of and pursuant to' a State law, statute, etc., Adickes v. S. H. Kress & Co., 398 U.S. 144, 162 n. 23, [90 S.Ct. 1598, 1611, 26 L.Ed.2d 142] (1970)."

The same view has been taken by other courts which have had occasion to review requests for relief under § 1983 involving the refusal of private hospitals to perform sterilizations or abortions. In Doe v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir. 1973), the court rejected the argument that an abortion must be provided by a private hospital because of reception of Hill-Burton funds. The court ruled:

> The facts that defendants have accepted financial support . . . from both the federal and state governments, and that the hospital is subject to detailed regulation by the State, do not justify the conclusion that its conduct, which is unaffected by such support or such regulation, is governed by § 1983.

*Doe, supra* at 761.[12]

This decision was followed by the district court in Allen v. Sisters of St. Joseph, 361 F.Supp. 1212 (N.D.Texas, 1973), aff'd, 490 F.2d 81 (5th Cir. 1974)[13] in refusing to order a tubal ligation to be performed in a hospital which opposed such voluntary sterilizations on religious grounds.

In cases involving challenges to hospital actions in dismissing physicians from

12. In Adams v. Southern California First National Bank, 492 F.2d 324, 334 n. 27 (9th Cir. 1974), we cited this ruling with approval.

13. *But see* Holmes v. Silver Cross Hospital of Joliet, Ill., 340 F.Supp. 125 (N.D.Ill.1972); Cit- ta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Pa.1970); Bricker v. Sceva Speare Memorial Hospital, 339 F.Supp. 234 (D.N.H. 1972).

hospital staffs, both the Tenth and Sixth Circuits have also followed this view. In Jackson v. Norton-Children's Hospitals, Inc., 487 F.2d 502, 503 (6th Cir. 1973), the court affirmed a decision dismissing a § 1983 challenge based on the reception of Hill-Burton funds and the existence of state regulations. "Whenever state action has been discovered in the activities of an ostensibly private hospital something more than a partial federal funding is involved."

The Court cited the case of Ward v. St. Anthony Hospital, 476 F.2d 671, 675 (10th Cir. 1973), where it was held that "the state must be involved in the activity causing the alleged injury before federal jurisdiction can be invoked." That court also noted that "tax exemptions alone do not vest a private institution with state authority," supra at 675. It also cited Place v. Shepherd, 446 F.2d 1239 (6th Cir. 1971), where the court affirmed the dismissal of a case in which the plaintiff alleged that several private hospitals had refused to hire her because of her exercise of First Amendment rights. The court held that the state involvement necessary to support a § 1983 claim required more than a state charter, provision of public funds, or the granting of tax exemptions, supra at 1245. See also Bright v. Isenbarger, 445 F.2d 412 (7th Cir. 1971).

In Simkins v. Moses Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), the court held that the use of Hill-Burton funds to establish a separate but equal hospital provided a basis for a § 1983 suit. There, however, the state was deeply involved in the objectionable activity, since it authorized the dual hospital system and directed the disbursement of Hill-Burton funds to perpetuate it. Hence the decision is distinguishable.

A number of other cases have held that a private hospital receiving Hill-Burton funds acts under color of state law if it is the only hospital in the area. In Shulman v. Washington Hospital Center, 319 F.Supp. 252 (D.C.1970), the court held that constitutional standards could be imposed on hospitals which "were the only hospitals in the area, and thus acquired a quasi-public character," at 255. A similar result was reached in O'Neill v. Grayson County War Memorial Hospital, 472 F.2d 1140 (6th Cir. 1973) (hospital acted under color of state law where it was the only hospital in the city, had Hill-Burton funding, had facilities which were leased from the county in return for their maintenance and operation). See also Sams v. Ohio Valley General Hospital Association, 413 F.2d 826 (4th Cir. 1969); Meredith v. Allen County War Memorial Hospital Com'n, 397 F.2d 33 (6th Cir. 1968).

Here, however, Sacred Heart Hospital is not in such a dominant or monopoly situation. Indeed plaintiff can scarcely make this argument since she in fact availed herself of the services of one of the other hospitals in the city in obtaining a tubal ligation.

Thus we find that the provision of 13 percent of Sacred Heart General Hospital's construction costs since 1961 through the Hill-Burton and HEW programs, exemption from taxes and regulation by the state do not provide a basis for a § 1983 suit. Hence, it was proper to dismiss the complaint.

## III.

### MOOTNESS

The dismissal of appellant's request for equitable relief can also be sustained on the ground that the issue is moot in light of appellant's sterilization. The parties have stipulated that "Surgical sterilization by tubal ligation is generally considered permanent and irreversible, and plaintiff would not reasonably expect to ever be obligated to undergo such a procedure again." [14]

The court in Allen v. Sisters of Saint Joseph, 490 F.2d 81 (5th Cir. 1974), faced an identical situation. There the plain-

14. Stipulation of the parties No. 37, C.R. 379.

tiff had asked for an injunction requiring defendants to provide her with a tubal ligation. After their refusal, however, a sterilization was performed at another medical facility. The court ruled that "[W]e are unable to discern any viable controversy in the instant case that is susceptible to judicial resolution and relief," *supra* at 82.

Here appellant acted on her own behalf and did not pretend to represent a class. Rivera v. Freeman, 469 F.2d 1159 (9th Cir. 1972). This is not an issue "capable of repetition, yet evading review" as in Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973), Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Here the issue is more like that in DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 1706, 402 L.Ed.2d 164 (1974), where the action was dismissed as moot since the plaintiff would "never again be required to run the gantlet of the Law School's admission process." *See also* Hall v. Beals, 396 U.S. 45, 49, 89 S.Ct. 1624, 23 L.Ed.2d 38 (1969).

The Court in *DeFunis* also rejected the argument that mootness should not bar a decision on the merits where the issue was one of "great public interest," *supra* at 316 of 416 U.S., at 1706 of 94 S.Ct. Hence, here, where appellant has obtained the sterilization she sought and where she proceeded on an individual basis, the request for equitable relief is moot and was properly dismissed.

However, appellant also sought a declaratory judgment and damages for the alleged violation of her rights. As the court in McCabe v. Nassau County Medical Center, 453 F.2d 698 (2d Cir. 1971) stated, "The cases make clear that the damage claim . . . under 42 U.S.C. § 1983 is not mooted merely because [the plaintiff] no longer needs equitable relief. Powell v. McCormick, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)," *supra* at 702.

Although the damage claim and request for declaratory judgment are not mooted, the appellant has no cause of action since she failed to demonstrate that defendants acted under color of state law, *see* discussion *supra*. Since she has failed to bring her case under § 1983, we also affirm the dismissal of her request for damages and declaratory relief.

The judgment of the district court is Affirmed.