James Michael TAYLOR and Gloria Jeane Taylor, husband and wife, on behalf of themselves, Individually, and on behalf of others who may be members of a class of persons similarly situated, Plaintiffs-Appellants,

v.

ST. VINCENT'S HOSPITAL, a Montana Corporation, Defendant-Appellee.

No. 74–1142.

United States Court of Appeals, Ninth Circuit.

Aug. 26, 1975.

Certiorari Denied March. 1, 1976. See 96 S.Ct. 1420.

Robert L. Stephens, Jr. (argued), Billings, Mont., for plaintiffs-appellants.

Stephen H. Foster (argued), Billings, Mont., for defendant-appellee.

OPINION

Before KOELSCH and CARTER, Circuit Judges, and SCHNACKE *, District Judge.

JAMES M. CARTER, Circuit Judge.

The Taylors appeal from the judgment of the district court, sitting without a jury, based upon the stipulated facts which appear in the court's final pre-trial order. We affirm.

In its Opinion, 369 F.Supp. 948 (D.Montana 1973), the court aptly summarized the pertinent facts as follows:

"St. Vincent's Hospital is a private corporation which operates a hospital facility in Billings, Montana, known as St. Vincent's Hospital. It has done so since May 1, 1972, when it took over the operation of the hospital from the Sisters of Charity of Leavenworth, also a private corporation, whose members are all members of a religious order of that name. The physical facilities of St. Vincent's Hospital are now and at all times material in this case have been owned by the Sisters of Charity of Leavenworth, a corporation.

"As a private, charitable, non-profit corporation, St. Vincent's Hospital received certain tax benefits from the State of Montana. The Sisters of

* Honorable Robert H. Schnacke, United States District Judge, Northern District of California, sitting by designation.

Charity of Leavenworth, a corporation, when it operated St. Vincent's Hospital, also applied for and received funds under the Hill-Burton Act (42 U.S.C. §§ 291–291(c)) during the years 1956 through 1963.

"Tubal ligation as a sterilization procedure had not, prior to the preliminary injunction issued by this court in this cause, been performed at St. Vincent's Hospital because of the interpretation placed upon the publication entitled "Ethical and Religious Directives for Catholic Hospitals" which is incorporated by reference in the By-laws of the medical staff of St. Vincent's Hospital. The Bishop of Eastern Montana of the Roman Catholic Church has the responsibility to interpret the directives for members of the Church of Eastern Montana, including members of the congregation of the Sisters of Charity of Leavenworth who are on the Board of Directors or are employed at St. Vincent's Hospital. The Preamble in the "Ethical and Religious Directives" makes it clear that they are based upon moral convictions.

"St. Vincent's Hospital and Billings Deaconess Hospital are the only hospitals in Billings, Montana. In June, 1972, the maternity departments of the two hospitals were combined in St. Vincent's Hospital, and an intensive care nursery was constructed in St. Vincent's Hospital in order to reduce infant mortality in the community and to reduce the cost to the community of duplicated maternity services. Prior to approving consolidation of maternity services at St. Vincent's Hospital, the Trustees of Sisters of Charity of Leavenworth advised local obstetricians and trustees of the Billings Deaconess Hospital that surgical steriliza-

tions would not be allowed at St. Vincent's Hospital. The consolidation was completed and the combined maternity department with intensive care facilities opened in June, 1972.

"The plaintiffs, James and Gloria Taylor, are a married couple who were expecting a second child to be delivered by Caesarian [sic] section on October 31, 1972. The couple decided that they wished Mrs. Taylor to be sterilized by tubal ligation at the time of the Caesarian [sic] section and requested permission of St. Vincent's Hospital for the procedure. Permission was denied." Id. at 949.

Initially, the district court issued an injunction allowing Mrs. Taylor to have a tubal ligation with the cesarean section, and found that the hospital had acted "under color of state law" (42 U.S.C. § 1983) by virtue of its advantageous state tax position and receipt of Hill-Burton Act funds, supra. However, on June 18, 1973, the "Church Amendment (§ 401(b)) of the Health Programs Extension Act of 1973, P.L. 93–45, 87 Stat. 91, was signed into law.[1] Finding that "[b]y its plain language, the Act prohibits any court from finding that a hospital which receives Hill-Burton funds is acting under color of state law," the court dissolved its prior injunction and denied all relief. This appeal ensued.

■ First, despite the fact that Mrs. Taylor has already had the tubal ligation performed, this case is not moot because of its class action nature. See Sosna v. Iowa, 419 U.S. 393, 438–441, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

Second, virtually all of the issues raised by this appeal have recently been resolved adversely to appellants by another panel of this court. Chrisman v.

1. In pertinent part the "Church Amendment" provides:

".  .  .
Sec. 401(b). The receipt of any grant, contract, loan, or loan guarantee under the Public Health Service Act, the Community Mental Health Centers Act, or the Developmental Disabilities Services and Facilities Construction Act by any individual or entity

does not authorize any court or any public official or other public authority to require .  .  . (2) such entity to—
(A) make its facilities available for the performance of any sterilization procedure or abortion if the performance of such procedure or abortion in such facilities is prohibited by the entity on the basis of religious beliefs or moral convictions  .  .  .."

*Sisters of St. Joseph of Peace,* 506 F.2d 308 (9 Cir. 1974). With respect to those issues relevant to the present case, *Chrisman* held that:

I. The Church Amendment (§ 401(b)) properly permits denominational hospitals to refuse to perform sterilizations. 506 F.2d at 310–312.

II. Section 401(b) is not an impermissible legislative limitation upon judicial power, *id.* at 311, nor does it violate the Establishment Clause of the First Amendment. *Id.*

III. If the hospital's refusal to perform sterilization infringes upon any constitutionally cognizable right to privacy, such infringement is outweighed by the need to protect the freedom of religion of denominational hospitals "with religious or moral scruples against sterilizations and abortions." *Id.* at 312. *See Doe v. Bolton,* 410 U.S. 179, 197–198, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Allen v. Sisters of St. Joseph,* 361 F.Supp. 1212 (N.D.Texas 1973), app. dism'd, 490 F.2d 81 (5 Cir. 1974); *Watkins v. Mercy Medical Center,* 364 F.Supp. 799 (D.Idaho 1973); *Doe v. Bellin Memorial Hospital,* 479 F.2d 756, 759–760 (7 Cir. 1973) (abortions).

IV. Neither "the enjoyment by the hospital of tax exemptions, its regulation by the state and its performance of a public function" in addition to receipt of Hill-Burton funds, are proper grounds for holding that it acted under color of state law with respect to 42 U.S.C. § 1983. *Chrisman,* 506 F.2d at 312–314.

■ There is one significant difference between the present case and *Chrisman, supra,* namely, the fact that St. Vincent's Hospital had the only maternity department in Billings, Montana, where the plaintiff could secure a tubal ligation at the time of her cesarean delivery. In *Chrisman* the hospital involved was not the only hospital in Eugene, Oregon, to supply such services. As a result, in *Chrisman,* it was not necessary to consider whether the "state action" might be found from the fact that

the hospital was the only one in the area able to supply the services above.

However, the Supreme Court in *Jackson v. Metropolitan Edison Company,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), decided about a month after this court decided *Chrisman,* held that private conduct may not be regarded as that of the state unless the state is involved in the specific activity complained of, and that the monopoly status of a private utility company did not in itself or in combination with state regulation and the fact that an essential public service was involved, constitute "state action." There the Supreme Court in upholding the district court and the affirmation by the Third Circuit, stated:

"All of petitioner's arguments taken together show no more than that Metropolitan was a heavily regulated private utility, enjoying at least a partial monopoly in the providing of electrical service within its territory, and that it elected to terminate service to petitioner in a manner which the Pennsylvania Public Utilities Commission found permissible under state law. Under our decision this is not sufficient to connect the State of Pennsylvania with respondent's action so as to make the latter's conduct attributable to the State for the purposes of the Fourteenth Amendment." (419 U.S. p. 358, 95 S.Ct. p. 457).

With respect to the argument that "state action" should be found from Metropolitan's monopoly status, the Court said:

"Petitioner first argues that 'state action' is present because of the monopoly status allegedly conferred upon Metropolitan by the State of Pennsylvania. As a factual matter, it may well be doubted that the State ever granted or guaranteed Metropolitan a monopoly. But assuming that it had, this fact is not determinative in considering whether Metropolitan's termination of service to petitioner was 'state action' for purposes of the Fourteenth Amendment. In *Pollak, supra*

[*Public Utilities Commission v. Pollak*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068], where the Court dealt with the activities of the District of Columbia Transit Company, a congressionally established monopoly, we expressed [expressly] disclaimed reliance on the monopoly status of the transit authority. *Id.*, at 462, 72 S.Ct. 813. Similarly, although certain monopoly aspects were presented in *Moose Lodge No. 107, supra* [*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627], we found that the lodge's action was not subject to the provisions of the Fourteenth Amendment. In each of these cases, there was insufficient relationship between the challenged actions of the entities involved and their monopoly status. There is no indication of any greater connection here." (419 U.S. p. 351, 95 S.Ct. p. 454).

Likewise, in our case, as in *Jackson*, there is "insufficient relationship between the challenged actions of the entity involved and their monopoly status."

In addition, there is even less justification here than in *Jackson* for finding "state action" or color of state law in the operation of St. Vincent's Hospital because of its monopoly status. In *Jackson* the court assumed for the purpose of its decision that Metropolitan's monopoly was state-created and guaranteed. In our case there is not even a suggestion that the State of Montana had anything to do with the fact that St. Vincent's Hospital provided the only complete maternity services in Billings, Montana.

*Jackson* rejected the contention, also made by plaintiff here, that "state action" was present because the defendant provided "an essential public service" and thus performed a "public function." *Id.* 352, 95 S.Ct. 449. The operation of a denominational hospital can no more be held to involve "the exercise by private entity of powers traditionally exclusively reserved to the State," *id.* 419 U.S. 352, 95 S.Ct. 454 than can the operation of a private electrical utility company.

The question of whether a denominational hospital, which is the only hospital in the community with certain desired facilities, performs a public function for Fourteenth Amendment purposes has been decided by both the Montana Supreme Court and the federal district court in Montana. In *Ham v. Holy Rosary Hospital*, 529 P.2d 361 (Montana 1974), on facts identical to those here, except that no Hill-Burton funds had been received, the Supreme Court of Montana adopted an unreported opinion by Chief Judge Russell E. Smith of the United States District Court for the District of Montana, holding:

"There is [no] significant relationship between the state and the action here sought to be enjoined. . . .

The fact that Holy Rosary Hospital has a practical, but not state enforced, monopoly in obstetrical services in Miles City does not make its action state action."

Finally, there is serious question as to whether any monopoly actually exists in Billings, Montana, as to cesarean delivery. The record shows that an agreement was entered into between St. Vincent's Hospital and Billings Deaconess Hospital prior to the hearing in the district court providing for a procedure whereby after a woman had been admitted to St. Vincent's Hospital she could be transferred by ambulance approximately two and a half city blocks to Deaconess Hospital where the cesarean section and tubal ligation could be performed and the baby delivered. It provided for the maintenance and transportation of intensive care equipment (a Kreiselman and Armstrong incubator and adapter) to Deaconess Hospital the evening before the scheduled surgery, and the transportation back to St. Vincent's Hospital of the intensive care equipment and newborn child, after surgery.

We hold that state action or action under color of state law was not involved.

Judgment affirmed.