**Jane DOE, Appellant,**

v.

**John H. POELKER, Mayor of the City of St. Louis, Missouri, and R. Dean Wochner, M.D., Director of the Department of Health and Hospitals and Acting Hospital Commissioner of the City of St. Louis, Missouri, Appellees.**

**No. 74–1232.**

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1974.

Decided June 4, 1974.

Rehearing and Rehearing En Banc Denied June 27, 1974.

Frank Susman, St. Louis, Mo., for appellant.

Eugene P. Freeman, St. Louis, Mo., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

ROSS, Circuit Judge.

This is an action for a declaratory judgment and a permanent injunction against implementation of the policies, rules, regulations and procedures barring the performance of abortions in the two public hospitals in the City of St. Louis, Missouri. From an order dismissing the complaint for lack of standing and mootness, Doe appeals. For the reasons hereinafter expressed, we reverse.

Jane Doe alleged in her complaint, and verified by way of affidavit, that she was pregnant, was the mother of two children, was in severe financial straits, and was suffering from cervical fibroid tumors and polyps, a retroverted uterus, and trichomycosis. Twice she consulted staff members at Starkloff Memorial Hospital, owned and operated by the City of St. Louis, and was advised that she would require a hysterectomy. They told her to procure an abortion elsewhere and then return to the hospital for the hysterectomy. The reasons proffered by the hospital for the two-operation recommendation was the hospital's stated policy[1] against performing abortions. Doe thereupon commenced this action against the Mayor of St. Louis and the Director of the Department of Health and Hospitals on her own behalf and on behalf of the entire class of pregnant women residents of the City of St. Louis, Missouri, desiring to utilize the personnel, facilities and services of the general public hospitals within the City of St. Louis for the termination of pregnancies.

After the complaint had been filed and service perfected upon one of the defendants, but before service on the other defendant, Doe procured an abortion from an alternative source.[2] Defendants thereafter moved the court to dismiss Doe's complaint for lack of standing.[3] In granting defendants' motion, the court held that, by virtue of the fact that Doe had obtained an abortion, Doe was no longer a member of the class she purported to represent. The court then ordered that Doe could not represent the class of pregnant female residents of St. Louis. Next, the court determined that although she may have had standing to proceed on her own behalf on the date she filed her com-

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. That policy is expressed in the defendants' joint answer:

    10. Abortion, for reasons other than to save the mother from grave physiological injury or death, is against and contrary to the laws and public policy of the State and City.

    \*   \*   \*   \*   \*

    12. [A]bortion, other than to protect the mother from grave physiological injury or death, is a medical procedure which lawfully can and has been reasonably excluded from such services given by the City's hospitals.

2. This fact was verified to the court by Doe's counsel. Throughout the litigation her counsel has sought to protect Doe's true identity in order to avoid harassment. However, counsel has assured the court that Doe remained ready and able for deposition or other discovery procedures. Counsel's assurances and the fact that Doe herself, under her pseudonym signature, has filed an affidavit affirming the veracity of the relevant facts, permit us to accept as true, her existence and her pregnant state at the commencement of this action. See Roe v. Wade, 410 U.S. 113, 124, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179, 187, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

3. This motion was brought six months after the filing of the complaint and presumably upon defendants' first notice that Doe had obtained an abortion.

plaint, her individual case had become moot after she procured an abortion. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) compel a different result on both standing and mootness.

The question of standing in the federal court is to be considered in the framework of Article III which restricts the judicial power to "cases" and "controversies." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 151, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). In terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution. Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). The prerequisites of standing are a "logical nexus between the status asserted and the claim sought to be adjudicated," Flast v. Cohen, *supra,* 392 U.S. at 102, and the necessary degree of contentiousness, Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

These requirements are met on these facts. Plaintiff's injury and that of her class is her inability to obtain an abortion prior to fetal viability in St. Louis public hospitals free from regulations other than those that advance interests in maternal health. The interest sought to be protected is the constitutionally guaranteed right to an abortion prior to viability. The defendants are attempting to regulate that interest by the challenged rules and policies of the hospital which inhibit and (in effect) proscribe abortions.

This conclusion that Doe has standing is mandated by the resolution of the identical issue in Roe v. Wade, *supra,* 410 U.S. at 124, and Doe v. Bolton, *supra,* 410 U.S. at 187. Each of the plaintiffs in those actions was, like the plaintiff here, not shown to have been pregnant at the time of the district court hearing. Likewise, each of the plaintiffs was, at the relevant time, precluded from implementing her previability abortion decision by the challenged statutes and regulations. In *Roe,* the Supreme Court said:

> Viewing Roe's case as of the time of its filing and thereafter until as late as May [yet prior to the May 22 district court hearing], there can be little dispute that it *then* presented a case or controversy and that, wholly apart from the class aspects, she, as a pregnant single woman thwarted by the Texas criminal abortion laws, had standing to challenge those statutes. . . . The "logical nexus between the status asserted and the claim sought to be adjudicated," and the necessary degree of contentiousness are both present.

*Id.* at 124 (emphasis supplied and citations omitted). The court thereupon found that Roe had standing to undertake the litigation. *Id.* at 125. A similar result was reached in Doe v. Bolton where it was concluded that Doe's pregnant state on the date of the commencement of the action gave her standing to maintain the action. *Id.* at 187. Recently, in Doe v. Israel, 482 F.2d 156, 158 (1st Cir. 1973), cert. denied, —— U. S. ——, 94 S.Ct. 2406, 40 L.Ed.2d 772, 42 U.S.L.W. 3627 (1974), the First Circuit has said:

> In response to questioning defendant essentially suggests only one: that plaintiffs, no longer being pregnant, have no sufficient interest or standing. In the light of *Roe,* this argument proves too much.

> We consider that defendant's claim of mootness is a will-o'-the-wisp and assumes the very question at issue. If a plaintiff has a right to terminate her pregnancy—which is the legal question before us—the sooner she succeeds in doing so, the better. We have in mind the trimester trilogy, on which defendant relies in another connection, and its effect on viability and

the pregnant plaintiff's health. It seems not only illogical but, to use a polite word, harsh, to argue that in order to establish her right to an abortion a woman must decline to have it. (Citation omitted.)

We conclude here that Doe has standing to challenge the hospital policy. Moreover, since she has adequate standing to proceed in her own behalf, on the authority of Doe v. Bolton, *supra*, 410 U.S. at 188, Doe and her class can be recognized.

■ Separate and distinct from standing is the doctrine of mootness. That question is also a product of the Article III requirement of a case or controversy. North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). The usual rule in federal cases is that an actual controversy must exist at all stages of appellate or certiorari review, and not simply at the date the action is initiated. SEC v. Medical Committee for Human Rights, 404 U.S. 403, 406, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); Golden v. Zwickler, *supra*, 394 U.S. at 108; United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950). However, a case presenting a question that is "capable of repetition, yet evading review," is nevertheless amenable to federal adjudication even though it might otherwise be considered moot. Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). As is clear from the Supreme Court's treatment in *Roe* and *Doe*, pregnancy is one of the exceptional situations exempted from the usual rule.

■ In *Roe*, the Court said:

But when, as here, pregnancy is a *significant fact in the litigation*, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid. Pregnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us. Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be "capable of repetition, yet evading review."

*Id.* at 125 (citations omitted). The Court accepted as true Roe's pregnant state as of the inception of her suit. The Court did not find, however, that Roe was likewise pregnant at the time of the trial court's hearing on May 22, 1970. Yet, based upon the foregoing reasoning, the Court held that she presented a justiciable controversy and "the termination of her 1970 pregnancy ha[d] not rendered her case moot." *Id.* at 125. Likewise in Doe v. Bolton, *supra*, 410 U.S. at 187, the Court accepted the plaintiff's pregnant state on the date of the filing of the complaint and thereupon held, on the basis of the decision in *Roe*, that the interim termination of her pregnancy had not rendered the case moot. To interpret the Supreme Court's discussion of mootness, as the district court did here, to require pregnancy to be established at the time of trial, would be to permit frustration of the logic announced by the Supreme Court. Through dilatory tactics opposing counsel could effectively preclude review of the challenge until abortion or birth terminated the pregnancy. Crowded dockets could cause the same unfortunate result. Accordingly, we find that the plaintiff Jane Doe in this case presents a justiciable controversy and the termination of her pregnancy sometime after the filing of the complaint, but prior to trial, does not render her case moot.

For the reasons hereinbefore expressed, we reverse and remand to the district court for further proceedings consistent with the views expressed in this opinion and in our opinion in Nyberg v. City of Virginia, 495 F.2d 1342 (8th Cir. 1974).