Jane DOE, Individually and on behalf of all others similarly situated, Appellant,

v.

CHARLESTON AREA MEDICAL CENTER, INC., a corporation, et al., Appellees.

No. 75–1161.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 22, 1975.

Decided Nov. 6, 1975.

David Grabill, Charleston, W. Va. and (Katharine Welch, Charleston, W. Va., on brief), for appellants.

Edward W. Eardley, Charleston, W. Va. (Steptoe & Johnson, Charleston, W. Va., on brief), for appellees.

Stanton J. Price and Stephen Axelrad, Los Angeles, Cal., on brief, for amicus curiae for National Health Law Program.

Before HAYNSWORTH, Chief Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Appellant, suing under the fictitious name of Jane Doe, brought this action under 42 U.S.C. § 1983 on behalf of herself and others similarly situated to redress deprivation of rights under color of state law. She sought declaratory and injunctive relief against enforcement of the policy of Charleston Area Medical Center, Inc. (CAMC) of prohibiting abortions except those done for the purpose of saving the life of the mother. The district court, after conducting an expedited hearing, denied Doe's motion for a preliminary injunction and dismissed the complaint on the grounds that she had failed to show irreparable injury and the required "state action." We reverse the district court's determinations that Doe failed to demonstrate irreparable injury and deprivation of rights under color of state law and remand with instructions.

The court also ruled that Doe had failed to satisfy the requisites for a class action. We think otherwise, and direct injunctive relief for the class.

I.

According to Doe's affidavit, she was at the time this action commenced a 21-year-old unmarried student in her first trimester of pregnancy. Wishing to terminate her pregnancy, she found a doctor willing to perform the operation on an in-patient basis at the Charleston Area Medical Center, Inc., Memorial Division, where the doctor had staff privileges.[1] Her request for permission to have an abortion performed at CAMC was denied by an official of that facility who explained that the rules of CAMC did not permit a doctor to perform an abortion at any of the divisions of CAMC unless the abortion was necessary to save the life of the mother or child.[2]

---

1. The statement that the doctor had staff privileges at CAMC is contained in the complaint verified by Doe.

2. The hospital policy is to faithfully follow West Virginia's criminal abortion statute, W.Va. Code ch. 61, art. 2, § 8, which reads as follows:

*Abortion; penalty.*
Any person who shall administer to, or cause to be taken by, a woman, any drug or other thing, or use any means, with intent to destroy her unborn child, or to produce abortion or miscarriage, and shall thereby destroy such child, or produce such abortion

The complaint in this suit for declaratory and injunctive relief against the hospital's policy and its enforcement was filed with accompanying affidavit on December 6, 1974. The court scheduled an expedited hearing on the motion for a preliminary injunction for Monday, December 9.

At that hearing, appellant called Mr. Don L. Arnwine, president of CAMC, as a witness. His testimony revealed the following facts:

The hospital's policy on abortions "is regulated to the existing West Virginia statute which allows the performance of abortions only in the interest of the life of the mother" and that abortions are not permitted in CAMC's facilities where the life of the mother does not appear in danger; the hospital has facilities to perform abortions and performs some "therapeutic" abortions, defined by CAMC to mean those necessary for protection of the life of the mother; CAMC had in the past received Hill-Burton[3] funds for construction purposes; CAMC is affiliated with West Virginia University Medical Center[4] "for the purposes of providing educational experience to medical students and post graduate training;" it receives Medicare and Medicaid funds for

the reimbursement of hospitalization expenses; and it receives state funds in support of its maternity clinic.

With respect to the availability of facilities for abortions, Mr. Arnwine further testified that the beds in the gynecological section which would be utilized for in-patient abortions were occupied at virtually 100 percent capacity but that there existed some immediate capacity for abortions on an out-patient basis.

On December 11, the court entered an order denying the preliminary injunction and dismissing the complaint for failure "to state a cause of action." The court grounded its decision on the finding that Doe had failed to show the requisite state action and the necessary irreparable injury. In addition, the court ruled that the suit could not be maintained as a class action since Doe had not satisfied the prerequisites for a class action under Fed.R.Civ.P. 23.

On January 15, 1975, 12 days after Doe's notice of appeal from the order of December 11, the court entered an amended order which affirmed in substance the earlier order, except that language dealing with the dismissal of the complaint was deleted.[5]

or miscarriage, shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than three nor more than ten years; and if such woman die by reason of such abortion performed upon her, such person shall be guilty of murder. No person, by reason of any act mentioned in this section, shall be punishable where such an act is done in good faith, with the intention of saving the life of such woman or child.

3. 42 U.S.C. § 291 et seq.

4. Arnwine also testified that CAMC in cooperation with the West Virginia University Medical Center receives from HEW "an area health education center contract." App. 36. No explanation of what such grant entails was given: whether it is the affiliation for "purposes of providing educational experience" to which Arnwine testified elsewhere or whether it entails CAMC's operation of the Charleston Division of the West Virginia University Medical Center as alleged in appellant's brief.

5. The dismissal was apparently under Rule 12(b)(6), Fed.R.Civ.P., by the district court on

its own motion. We are uncertain what impact the district judge intended the amended order to have. Neither Doe nor CAMC were informed of the court's action prior to the entry of the order, and neither party was able to offer any explanation for its entry.

The major distinction between the two orders is that whereas the first dismissed the complaint, the second did not.

We need not concern ourselves in this case with the question of what impact the amended order might have on appealability of the original dismissal as a final order appealable under 28 U.S.C. § 1291; for, it is clear that an order denying a preliminary injunction is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1). *Mercury Motor Express, Inc. v. Brinke,* 475 F.2d 1086 (5th Cir. 1973); *Morning Telegraph v. Powers,* 450 F.2d 97 (2d Cir. 1971), *cert. denied,* 405 U.S. 954, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972); *Lone Star Cement Corp. v. FTC,* 339 F.2d 505 (9th Cir. 1964); *Flight Engineers' International Ass'n v. National Mediation Board,* 119 U.S.App.D.C. 171, 338 F.2d 280 (D.C. Cir. 1964).

## II.

### COLOR OF LAW

■ The district court concluded that CAMC, a private nonprofit hospital organized under the laws of West Virginia, was not acting under color of state law and thus not amenable to suit under 42 U.S.C. § 1983 because receipt of Hill-Burton funds and present participation in Medicare and Medicaid programs did not amount to state action.[6] In so holding, the court completely ignored a clear line of Fourth Circuit decisions to the contrary. *Duffield v. Charleston Area Medical Center, Inc.,* 503 F.2d 512 (4th Cir. 1974). *Cf. Christhilf v. Annapolis Emergency Hospital Ass'n,* 496 F.2d 174 (4th Cir. 1974); *Sams v. Ohio Valley General Hospital Ass'n,* 413 F.2d 826 (4th Cir. 1969); *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir.

1963), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964).

■ The applicability of *Duffield* is especially easy to discern. In that case we held that this very same hospital corporation, CAMC, was sufficiently imbued with state action by receipt of Hill-Burton funds to invoke application of the fourteenth amendment. Such a decision is binding, not only upon the district court, but also upon another panel of this court—unless and until it is reconsidered en banc.[7]

Although aware that receipt of Hill-Burton funds has been treated differently by other circuits,[8] we adhere to our rule. Even if we were inclined to suggest en banc reconsideration, this case would not be an appropriate vehicle. Here, in addition to Hill-Burton funding and other financial and regulatory involvement by the state,[9] we find state

---

6. "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as 'state action' required under the Fourteenth Amendment." *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966). *See also Parish v. National Collegiate Athletic Ass'n,* 506 F.2d 1028, 1031 n. 6 (5th Cir. 1975); *Gibbs v. Titelman,* 502 F.2d 1107, 1110 (3d Cir. 1974), *cert. denied,* 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *Shirley v. State National Bank,* 493 F.2d 739, 741 (2d Cir.), *cert. denied,* 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *Green v. Dumke,* 480 F.2d 624, 628 (9th Cir. 1973). *But see Lavoie v. Bigwood,* 457 F.2d 7, 15 (1st Cir. 1972).

7. CAMC argued on appeal that the Health Programs Extension Act of 1973 prohibited the court in this case from using the receipt of Hill-Burton funds to compel CAMC to make its facilities available for the performance of an abortion. 42 U.S.C. § 300a–7(a)(2)(A). The Act apparently prohibits a finding of state action based on receipt of these funds "if the performance of such procedure or abortion in such facilities is prohibited by the entity *on the basis of religious beliefs or moral convictions.*" Id. (emphasis supplied). We find nothing in either the testimony of Mr. Arnwine at the hearing on the motion for a preliminary injunction or in his policy letter read to the court at that time that indicates CAMC's policy was based on religious belief or moral convictions within the meaning of this act. *See* 1973 U.S.Code Cong. & Admin. News at pp. 1473, 1477–78; *Chrisman v. Sisters of St. Joseph of Peace,* 506 F.2d 308 (9th

Cir. 1974); *Taylor v. St. Vincent's Hospital,* 369 F.Supp. 948 (D.Mont.1973); *Watkins v. Mercy Medical Center,* 364 F.Supp. 799 (D.Idaho 1973). We think the statute is inapplicable. CAMC's only attempt to invoke a moral obligation falls short of an assertion that the policy rests upon moral and religious belief rather than the West Virginia criminal statute: "The policy of the appellees with respect to nontherapeutic abortions is naturally related to the long existing Statute of West Virginia and *motivated thereby from a moral standpoint.*" Brief for Appellee at 5 (emphasis added).

8. Cases reaching a contrary conclusion: *Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc.,* 507 F.2d 1103 (9th Cir. 1974); *Jackson v. Norton-Children's Hospital, Inc.,* 487 F.2d 502 (6th Cir. 1973), *cert. denied,* 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974); *Doe v. Bellin Memorial Hospital,* 479 F.2d 756 (7th Cir. 1973); *Barrett v. United Hospital,* 376 F.Supp. 791 (S.D.N.Y.), *aff'd mem.,* 506 F.2d 1395 (2d Cir. 1974); *Allen v. Sisters of St. Joseph,* 361 F.Supp. 1212 (N.D.Tex.1973), *appeal dismissed,* 490 F.2d 81 (5th Cir. 1974). *Cf. Ward v. St. Anthony Hospital,* 476 F.2d 671 (10th Cir. 1973).

Cases reaching a similar conclusion: *Pollock v. Methodist Hospital,* 392 F.Supp. 393 (E.D. La.1975); *Bricker v. Sceva Speare Memorial Hospital,* 339 F.Supp. 234 (D.N.H.), *aff'd* 468 F.2d 1228 (1st Cir. 1972); *Citta v. Delaware Valley Hospital,* 313 F.Supp. 301 (E.D.Pa. 1974).

9. Doe urged additional grounds on which to find state action: (1) state licensing and tax exemption; (2) affiliation with West Virginia

involvement in the specific hospital policy under attack.[10]

■ In his initial order, the district judge found that CAMC's "policy of refusing all but therapeutic abortions . . . is based in part upon Chapter 61, Article II, Section 8, of the West Virginia Code, which prohibits nontherapeutic abortions."[11] We hold that CAMC's anti-abortion policy based on West Virginia's criminal abortion statute involved the state sufficiently to constitute the policy "state action" under 42 U.S.C. § 1983.

■ In *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court held that *Adickes* would establish the requisite "color of law"[12] under 42 U.S.C. § 1983 to recover damages against S. H. Kress & Co., a private corporation, if she showed on remand (1) that there existed "a state-enforced custom of segregating the races in public eating places in Hattiesburg at the time of the incident in question; and (2) that Kress' refusal to serve her was motivated by that state-enforced [action] . . .." *Id.* at 173–74, 90 S.Ct. at 1617. Since state involvement through a custom having the force of law satisfies the "color of law" requirement of 42 U.S.C. § 1983, a fortiori the *statute* in this case meets the requirement.

■ *Adickes* and *Peterson v. City of Greenville,* 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963) hold that where pri-

vate actions are required by local ordinance or custom having the effect of law the initiative for those actions is the responsibility of the "state." Thus, conduct otherwise private in nature may assume the character of state action under the fourteenth amendment and 42 U.S.C. § 1983. *Cf. Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172–73, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Furthermore, in *Simkins, supra* at 968, we stated that "government sanction need not reach the level of compulsion to clothe what is otherwise private discrimination with 'state action.'"

In this case, a letter from Mr. Arnwine, president of CAMC, set forth the hospital's policy and the motivation for that policy as follows:

The present policy of the Charleston Area Medical Center with respect to performance of abortions at its hospital facilities is to literally adhere to the mandate set forth in Chapter 61, Article 2, Section [8] of the West Virginia Code. As you are aware, this statute limits the performance of abortions in the State of West Virginia to those instances where such act is done in good faith with the intention of saving the life of such woman and child. Charleston Area Medical Center will continue its present policy with respect to limiting the performance of abortions to those instances where authorized under the provision of the aforesaid statute unless and until the same is changed by legislative act or Court decision.[13]

tion cited by Arnwine for the hospital's policy. It is possible, however, to infer from his testimony another motivation based on shortage of available facilities.

12. The court decided that the facts alleged in this case would, if established, satisfy both the "color of law or custom" requirement of 42 U.S.C. § 1983 and "state action" under the *fourteenth amendment* since she grounded her complaint upon a deprivation of rights guaranteed by the equal protection clause of that amendment.

13. This letter was read by CAMC's counsel at the preliminary injunction hearing. App. 19–20.

University through CAMC operation of the Charleston Division of the West Virginia University Medical Center; (3) CAMC dominance (85%) of the obstetrical and gynecological facilities in the area; and (4) receipt of state funds for operation of CAMC's maternity and child care clinic.

10. Most of the courts which treat receipt of Hill-Burton funds differently from this circuit assume that "state action" should be found if the state were directly involved in the policy under challenge. *Ascherman, supra* at 1105; *Doe v. Bellin Memorial Hospital, supra* at 761; *Ward, supra* at 675; *Barrett, supra* at 800–05.

11. App. 77. The West Virginia criminal abortion statute was in fact the only direct motiva-

It seems clear that the anti-abortion hospital policy rests firmly upon what was thought to be the compulsion of state law. Thus the hospital acted "under color of law" when it refused to allow its facilities to be used by Doe for an abortion. Clearly there is jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

## III.

### IRREPARABLE INJURY

In the initial order denying the preliminary injunction and dismissing Doe's complaint, the district judge found that Doe had failed to show irreparable injury:

> Who can say that irreparable injury will result from the inability to terminate a pregnancy which has the potential to give life and love beyond measure.

The court's statement is surely an accurate reflection of human experience where the birth of a child is desired. It is not an accurate statement of the law where a woman wishes to terminate her pregnancy. The Supreme Court in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) stated that the "detriment that the State would impose upon the pregnant woman by denying [her decision to terminate the pregnancy through an abortion] altogether is apparent." *Id.* at 153, 93 S.Ct. at 727. The court then cited examples of such detrimental effects:

> Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it. In other cases, as in this one, the additional difficulties and continuing stigma of unwed motherhood may be involved. *Id.*

■ *Roe v. Wade* and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) establish beyond argument that denial under color of law of the right to abort, implicit in the right to be let alone, constitutes irreparable injury. In holding otherwise, the district court erred.

■ The West Virginia criminal abortion statute is unconstitutional beyond question. *Roe v. Wade, supra; Doe v. Bolton, supra.* Indeed, its unconstitutionality is so clear that a West Virginia three-judge court has dissolved itself on the ground that an attack upon it presented no substantial federal question requiring adjudication by three judges. *Smith v. Winter and Browning,* No. 74–571–CH (S.D.W.Va. April 17, 1975) *appeal docketed,* No. 75–1710, 4th Cir., July 16, 1975.

## IV.

### STANDING AND MOOTNESS

■ Subsequent to the district court's denial of relief Doe obtained an abortion outside the State of West Virginia. *Roe v. Wade, supra* 410 U.S. at 124–25, 93 S.Ct. 705, clearly establishes that a woman retains standing and the case is not rendered moot by an abortion subsequent to the initiation of the action but before appellate review. *See also Doe v. Poelker,* 497 F.2d 1063 (8th Cir. 1974); *Doe v. Israel,* 482 F.2d 156 (1st Cir. 1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 772 (1974). As the Supreme Court noted, this is the classical case of an action " 'capable of repetition, yet evading review.' " *Roe v. Wade, supra,* 410 U.S. at 125, 93 S.Ct. at 713.

## V.

### CLASS ACTION

In dismissing the class aspects of this suit, the court stated:

> The plaintiff at the hearing failed to demonstrate that there are a number

of identifiable members of the class she represents; therefore the Court finds that this action cannot be maintained as a class action.

In so ruling, he ignored the uncontradicted testimony of Ms. Connie Mooney, coordinator and chairperson of the Charleston Woman's Health Group, that based on an informal survey 70 women per month from the Charleston area were forced to go outside the state to terminate pregnancies.[14]

■ Where the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, that they are not specifically identifiable supports rather than bars the bringing of a class action, because joinder is impracticable. *Jack v. American Linen Supply Co.,* 498 F.2d 122, 124 (5th Cir. 1974); *Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir. 1972); *Davy v. Sullivan,* 354 F.Supp. 1320, 1325 (M.D.Ala.1973); *Poe v. Menghini,* 339 F.Supp. 986, 990 (D.Kan.1972); *Lansdale v. Tyler Junior College,* 318 F.Supp. 529, 534 (E.D.Tex.1970), *aff'd en banc,* 470 F.2d (5th Cir. 1972); Committee's Notes to Revised Rule 23, 3B Moore's Federal Practice, ¶ 23.01 [10–2] (2d ed. 1974). Where "the only relief sought for the class is injunctive and declaratory in nature . . .," even "speculative and conclusory representations" as to the size of the class suffice as to the requirement of many. *Doe v. Flowers,* 364 F.Supp. 953, 954 (N.D.W. Va.1973), *aff'd mem.,* 416 U.S. 922, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974). On remand, the district court will permit the suit to proceed as a class action, and will immediately issue its preliminary injunction to protect the class.

## VI.

■ To reiterate, we hold CAMC's anti-abortion policy and the West Virginia criminal abortion statute upon which the policy rests to be irreconcilable with *Roe v. Wade* and *Doe v. Bolton* and therefore unconstitutional. The district court's conclusion that appellant (and members of her class) failed to show irreparable injury is likewise irreconcilable with *Roe.* Since it is clear that appellant and her class will be entitled to prevail on the merits and presently suffer irreparable injury, the district court abused its discretion in refusing injunctive relief. On remand, the district court will immediately issue its injunction to require the hospital to ignore the unconstitutional state statute and abandon its policy, and instead, admit patients seeking abortions on the same basis as patients seeking other surgical procedures of similar difficulty and involving to a similar extent the use of hospital facilities,[15] all in accord with the command of *Roe, supra* 410 U.S. at 164, 93 S.Ct. 705.

Reversed and remanded with instructions.

---

14. App. 26–27.

15. *Doe v. Poelker,* 515 F.2d 541 (8th Cir. 1975); *Doe v. Hale Hospital,* 500 F.2d 144 (1st Cir. 1974), *cert. denied,* 420 U.S. 907, 95 S.Ct. 825, 42 L.Ed.2d 837 (1975); *Nyberg v. City of* Virginia, 495 F.2d 1342 (8th Cir. 1974), *appeal dismissed,* 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974); *Hathaway v. Worcester City Hospital,* 475 F.2d 701 (1st Cir. 1973).