Roger PHILLIPS, Marcel Joseph, and Robert Zembower, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

William R. BROCK, Secretary, United States Department of Labor, and United States Department of Labor, Defendants,

and

United States Sugar Corporation and Florida Fruit & Vegetable Association, Intervening Defendants.

Civ. No. H–85–2742.

United States District Court, D. Maryland.

Feb. 3, 1987.

Robert M. Schofield and Edward J. Tuddenham, Migrant Legal Action Program, Washington, D.C. and Gregory Schell, Legal Aid Bureau, Inc., Salisbury, Md., for plaintiffs.

Frank Buckley, U.S. Dept. of Labor, Washington, D.C. and Wendy P. Arnell, Asst. U.S. Atty., Baltimore, Md., for defendants.

Don S. Lemmer, Ann Margaret Pointer and Fisher & Phillips, Atlanta, Ga., for intervening defendants.

ALEXANDER HARVEY, II, Chief Judge.

In this civil action, the three farmworker plaintiffs are challenging an interpretation given to a federal regulation by the United States Department of Labor (hereinafter the "DOL"). The regulation in question requires certain employers who hire temporary alien workers to provide housing for United States workers. Plaintiffs Roger Phillips and Robert Zembower are citizens of the United States who reside in Allegany County, Maryland, and who perform farm work on a seasonal basis. Plaintiff Marcel Joseph, also a farmworker, is a citizen of Haiti who resides in Belle Glade, Florida.

Named as defendants are William R. Brock, in his official capacity as Secretary of the DOL, and the DOL itself. After plaintiffs had moved for summary judgment, the United States Sugar Corporation (hereinafter "U.S. Sugar") and the Florida Fruit and Vegetable Association were permitted by the Court to intervene as defendants. Plaintiffs seek to compel the federal defendants to administer and enforce housing provisions of the labor certification process for the temporary employment of aliens in the United States in accordance with certain applicable federal regulations. Plaintiffs are here seeking a declaratory judgment, an injunction, and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

Pending before the Court are a motion for certification of a class filed by plaintiffs, as well as cross motions for summary judgment filed by the parties. Memoranda, affidavits and exhibits have been filed in support of and in opposition to the pending motions by all the parties. Oral argument has also been heard on the motions in open court. For the reasons to be stated herein, plaintiffs' motion for certification of a class will be granted, plaintiffs' motion for summary judgment will be denied, and the motions for summary judgment filed by the federal defendants and the intervening defendants will be granted.

## I

### The Facts

The facts material to the pending motions are not in dispute. Under the authority of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, nonimmigrant aliens are under certain circumstances allowed into the United States to perform temporary labor. However, nonimmigrants seeking admission in order to perform temporary services or labor are excluded from admission to the United States unless "unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii). Pursuant to this statute, certain agricultural employers (hereinafter "H–2 growers") bring into this country foreign agricultural workers (hereinafter "H–2 workers") for temporary employment.

Under 8 U.S.C. § 1184(a), H–2 workers are to be admitted into this country only for such time and under such conditions as the Attorney General may by regulation prescribe. In making a determination concerning the admission of H–2 workers upon the request of an H–2 grower, the Attorney General is directed to consult with appropriate agencies of the federal government. 8 U.S.C. § 1184(c). The Attorney General, through the Immigration and Naturalization Service (hereinafter "the INS"), has promulgated regulations which provide:

Every petitioner must attach to every nonimmigrant visa petition to classify an alien under [8 U.S.C. § 1101(a)(15)(H)(ii) ], either:

(A) A certification from the Secretary of Labor or the Secretary's designated

representative stating that qualified persons in the United States are not available and that the employment of the beneficiary will not adversely affect wages and working conditions of workers in the United States similarly employed; or

(B) A notice that such certification cannot be made....

8 C.F.R. § 214.2(h)(3)(i).

The DOL accordingly issues a labor certification to H–2 growers allowing H–2 workers to be brought into this country only after determining that there are no United States workers available to accept the employment sought by the H–2 workers and that the admission of H–2 workers will not otherwise adversely affect similarly employed domestic laborers. Under the regulations, a United States worker is defined as "any worker who, whether U.S. national, citizen or alien, is legally permitted to work permanently within the United States." 20 C.F.R. § 655.200(b).

In order to properly exercise its aforementioned consultative function, the DOL has itself issued regulations which establish the procedures whereby temporary labor certification applications are processed and the general parameters upon which the determinations of availability and adverse effect are to be made. 20 C.F.R. Part 655. These regulations set forth the minimum conditions of employment and the types of domestic recruitment efforts an employer must undertake before the DOL will certify the unavailability of, and the absence of adverse effect upon, United States workers. 20 C.F.R. § 655.0. In order to ensure that the employment of H–2 workers will not adversely affect the wages and working conditions of similarly employed United States workers, these regulations provide, *inter alia,* that "each employer's job offer to U.S. workers must offer U.S. workers at least the same benefits which the employer is offering, intends to offer, or will afford, to temporary foreign workers." 20 C.F.R. § 655.202(a).

20 C.F.R. § 622.202(b)(1) pertains to the housing which is to be provided to domestic workers by employers who hire H–2 workers. 20 C.F.R. § 655.202(b)(1) provides as follows:

(b) Except when higher benefits, wages or working conditions are required by the provisions of paragraph (a) of this section, the Administrator has determined that, in order to protect similarly employed U.S. workers from adverse effect with respect to wages and working conditions, every job offer for U.S. workers must always include the following minimal benefit, wage, and working condition provisions:

(1) The employer will provide the worker with housing without charge to the worker. The housing will meet the full set of standards set forth at 29 CFR 1910.142 or the full set of standards set forth at Part 654, Subpart E of this chapter, whichever is applicable under the criteria of 20 CFR 654.401.... When it is the prevailing practice in the area of intended employment to provide family housing, the employer will provide such housing to such workers.

The housing regulations contained in 20 C.F.R. § 655.202(b)(1) (hereinafter "the (b)(1) regulation") were promulgated in 1978. In September of 1981, the DOL issued an interpretation of the (b)(1) regulation in which it stated that H–2 growers need not provide housing for workers who are able to commute to the work site from their residence. This policy was articulated in the DOL's General Administration Letter (hereinafter "GAL"), No. 46–81, dated September 11, 1981, which provided in pertinent part as follows:

M. *Housing at No Cost.* Each interstate and interstate (*sic*) criteria order shall contain an assurance that free housing is available to the worker which meets DOL standards (20 CFR 655.-202(b)(1)). This assurance covers the availability of housing for only those workers who cannot return to their residence in the same day....

In July of 1983, plaintiffs Zembower and Phillips interviewed for employment as farmworkers at Hepburn Orchards, Inc., an H–2 grower which was located in Wash-

ington County, Maryland and which was a member of the Washington County Fruit Growers' Association (hereinafter "WCFGA"). During the interview, a representative of Hepburn Orchards reportedly stated that free housing would not be made available to plaintiffs and others attending the interview because they resided within 35 miles of the job site. Plaintiffs Zembower and Phillips accepted employment at Hepburn Orchards and drove to work each day from their residences.

Plaintiffs Zembower and Phillips had in 1983 sought to require Hepburn Orchards to offer them free housing. Although an administrative ruling of a state agency was favorable, Hepburn Orchards refused to offer these plaintiffs free housing in 1984, and the clearance orders for H–2 workers submitted by Hepburn Orchards and other WCFGA H–2 growers in 1984 included merely the provision that "[w]orkers coming from outside commuting area and requiring housing [will be] provided same." The DOL upheld the restriction imposed by Hepburn and others on housing for workers within commuting distance, and approved the 1984 clearance orders for H–2 workers in the form submitted.

Plaintiff Joseph, a resident of Belle Glade, Florida, worked for U.S. Sugar during the harvesting seasons between 1981 and 1985. Plaintiff Joseph asserts that he would have accepted housing from his employer had it been offered. Since Joseph was considered a local worker under the GAL letter of September 11, 1981, he was not afforded free housing by U.S. Sugar. According to plaintiff Joseph, during each of the years between 1981 and 1984, the DOL approved clearance orders submitted by U.S. Sugar, despite the fact that free housing was not provided to local workers like Joseph.

On June 25, 1985, plaintiffs filed this civil action seeking declaratory and injunctive relief and challenging the DOL's interpre-

tation of the (b)(1) regulation.[1] By an Order dated June 18, 1986, this Court denied a motion to dismiss filed by the defendants, ruling that determination of the issue presented could not be made until the facts had been developed.

II

*Plaintiffs' Motion for*
*Certification of a Class*

Pursuant to Rule 23(a) and (b)(2), F.R. Civ.P., plaintiffs have requested that this Court certify a class of plaintiffs in this civil action. Plaintiffs seek to certify a national class of plaintiffs consisting of:

all persons who, whether United States nationals, citizens or aliens, are legally permitted to work permanently in the United States and who, since 1981, have sought or will seek employment with any agricultural employers that have petitioned or will petition for temporary foreign labor admitted to the United States pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii) —the "H–2 program."

Before a class may be certified under Rule 23, a plaintiff has the burden of establishing all four prerequisites set forth in Rule 23(a), namely: (1) that the class is so numerous that joinder of all members would be impracticable; (2) that there exist questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately promote the interests of the class.

When the prerequisites set forth in Rule 23(a) have been satisfied, an action may be maintained as a class action if the requirements set out in any numbered subsection of Rule 23(b) are also met. In this case, plaintiffs maintain that this civil action meets the requirements of Rule 23(b)(2),

---

1. Plaintiffs also contend in their complaint that the DOL's interpretation of the housing regulation violates 20 C.F.R. § 655.203(d)(2)(i), which requires that employers purchase newspaper advertisements for job opportunities stating that housing will be provided. Since the briefs and arguments of the parties have focussed almost exclusively on the DOL's interpretation of the (b)(1) regulation, the Court will not address this additional contention of plaintiffs, which is in any event without merit.

namely, that the parties opposing the class have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Defendants have opposed plaintiffs' request that a nationwide class be certified. Defendants first argue that if plaintiffs prevail in obtaining a nationwide injunction, the DOL's compliance with this Court's Order will likely precipitate suits in other jurisdictions by H–2 growers who are not parties to this action, and that inconsistent results in those suits will place an unfair burden on defendants. Defendants argue further that the fact-oriented nature of the determination being made in ruling in this suit militates in favor of allowing other jurisdictions to consider this matter in different factual contexts.

■ There is no merit to these arguments of defendants advanced in opposition to plaintiffs' request for certification of a nationwide class. As the Supreme Court stated in *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979), nothing in Rule 23 limits the geographical scope of a class action that is brought in conformity with the Rule. The Court in *Yamasaki* explained that a nationwide class is not inconsistent with accepted principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violations established, not by the geographical extent of the plaintiff class. *Id.*, citing *Dayton Board of Education v. Brinkman*, 433 U.S. 406, 414–20, 97 S.Ct. 2766, 2772–75, 53 L.Ed. 851 (1977). If a class action is otherwise proper, and if jurisdiction exists as to the claims of members of the class, the fact that the class is nationwide in scope does not necessarily mean that the relief afforded the plaintiffs will be more burdensome than necessary to redress the complaining parties. *Yamasaki*, 442 U.S. at 702, 99 S.Ct. at 2558.

■ In this case, plaintiffs have challenged the DOL's interpretation of a feder-

al regulation concerning the housing which H–2 growers throughout the nation must provide to U.S. agricultural workers. The DOL interpretation of the (b)(1) regulation which has been challenged here clearly affects conditions of employment offered by H–2 employers to local U.S. agricultural workers throughout the country. As Judge Mehrige stated in *Burwell v. Eastern Airlines, Inc.*, 68 F.R.D. 495, 497 (E.D. Va.1975), "Litigation on behalf of a national class over a nationally employed policy affecting all class members in a similar fashion is well suited to class action adjudication." Whether or not other growers might file suit in other jurisdictions should plaintiffs ultimately be successful, this civil action involving a policy which is national in scope is well-suited for class action treatment.[2]

Defendants also argue that the fact-oriented nature of the determination being made here militates in favor of allowing other jurisdictions to consider this matter in different contexts. This argument is likewise without merit. It assumes that it is proper for the DOL to exempt H–2 growers from providing free housing to local agricultural workers if different circumstances pertain to their ability to commute to work. However, plaintiffs' suit is based on the contention that the DOL's interpretation of the (b)(1) regulation is erroneous under any and all factual circumstances.

Accordingly, this Court concludes that certification of a nationwide class is appropriate should plaintiffs meet other requirements of Rule 23. Since the scope of the violation asserted by plaintiffs is nationwide, involving a DOL interpretation of a regulation affecting farmworkers throughout the country, certification of a national class of plaintiffs is appropriate if the requirements of Rule 23(a) have been met here. *Yamasaki, supra*, 442 U.S. at 702, 99 S.Ct. at 2558.

■ It is first apparent that plaintiff Marcel Joseph does not meet the require-

---

**2.** Since defendants have here prevailed on the merits, no such suits by growers would be ex-

pected in any event.

ments of Rule 23(a) and therefore cannot serve as a representative of the proposed class. According to an uncontradicted affidavit submitted by the intervenor defendants, plaintiff Joseph was fired from his position as a farmworker of U.S. Sugar in November of 1985. Joseph is therefore no longer working for an H–2 grower, and he does not now have a real interest in the outcome of this suit for declaratory and injunctive relief.

Furthermore, it does not appear that plaintiff Joseph is even a member of the class he wishes to represent. At the time when plaintiff Joseph was employed by U.S. Sugar, he had been issued a work permit by the INS which allowed him to seek employment in the United States on a temporary or indefinite basis. However, this work permit did not entitle him to work permanently in this country. Plaintiff Joseph has not met his burden of showing that he is a suitable representative of the class which plaintiffs seek to certify, particularly since he is not a U.S. worker as defined in the pertinent regulations. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 1761 (2d ed. 1986). Accordingly, plaintiff Joseph may proceed in this suit as an individual plaintiff, but not as a representative of the class.[3]

With regard to plaintiffs Phillips and Zembower, defendants argue that these two plaintiffs have failed to meet the requirements of Rule 23(a)(3) and (a)(4) because the class which they seek to certify is overly broad and consists of parties with potentially conflicting interests. Defendants assert that the class consists of both local U.S. workers who have been denied housing under the DOL's interpretation of the regulations at issue and also migrant and other workers who have been afforded housing under the DOL interpretation.

■ This Court concludes that plaintiffs have indeed failed here to satisfy the requirement of Rule 23(a)(4) that they will fairly and adequately protect the interests of the entire class which they seek to certi-fy. The adequacy of representation by plaintiffs is ultimately a question of fact with respect to which plaintiffs must bear the burden of proof. *Dameron v. Sinai Hospital of Baltimore, Inc.*, 595 F.Supp. 1404, 1408 (D.Md.1984). As Judge Miller explained in *Dameron,* the main focus of the Court concerning the adequacy of the named plaintiffs' representation of the class is on potentially antagonistic or conflicting objectives of the named plaintiffs in the litigation with those of the members of the putative class. *Id.* at 1409.

In this case, each of the named citizen plaintiffs is a local U.S. worker who was denied housing by an H–2 grower because he resided within commuting distance of the work site. However, as presently defined, the class which plaintiffs seek to certify also includes migrant and other non-local U.S. farmworkers who would not be denied housing under the DOL interpretation of the (b)(1) regulation. Such nonlocal U.S. workers are not adversely affected by the DOL interpretation of the regulation in question. In fact, their ability to obtain housing at agricultural worksites might be hindered if plaintiffs were to prevail on the merits and if H–2 growers were then required to furnish housing to additional workers. Since even potentially antagonistic interests are enough to cause concern about adequacy of representation, *Dameron, supra,* 595 F.Supp. at 1409, this Court does not find that plaintiffs are adequate representatives of the entire class which they seek to certify.

■ Nonetheless, "a finding of inadequacy of representation does not necessarily result in dismissal of the class suit. Rather, under the flexible powers granted in Rule 23, and in furtherance of the substantive goals at stake in the particular suit, the court may cause representation to become adequate by redefining the class...." 3B J. Moore & J. Kennedy, *Moore's Federal Practice* Para. 23.07[1] at 23–213 (2d ed. 1985), *citing Long v. Robinson,* 436 F.2d 1116 (4th Cir.1971). When

---

3. Plaintiff Joseph may not even have standing to sue as an individual. However, this question cannot be finally determined on this record as a matter of law pursuant to Rule 56, F.R.Civ.P.

questions arise concerning the ability of the named citizen plaintiffs to represent the interests of some part of the putative class, it is proper for the court to limit the class to those persons who would be adequately protected by the named representatives. *Dameron, supra,* 595 F.Supp. at 1409.

Pursuant to these principles, this Court finds and concludes that plaintiffs would adequately represent a class which is limited to U.S. farmworkers who have sought or who will seek employment with an H–2 grower and who have been or will be denied housing by the H–2 grower because they live within commuting distance of the work site. Such a definition of the class eliminates those U.S. farmworkers who are not affected by the DOL's interpretation of the (b)(1) regulation and whose interests may potentially conflict with those of the named plaintiffs. On the record here, the Court finds that the named plaintiffs adequately represent the class as redefined and that counsel for the named plaintiffs will adequately represent the interests of the class. Accordingly, plaintiffs have met the requirements of Rule 23(a)(4).

Other requirements of Rule 23(a) have likewise been met. The class here is so numerous that joinder of all members would be impractical. In 1984, the DOL certified the requests of more than 1,600 employers for H–2 workers. The class in question consists of all local U.S. farmworkers who have sought or will seek employment with one of these H–2 growers and who have been or will be denied housing because they live within commuting distance of the work site. Such a class is certainly too numerous to make joinder practical. *See Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638, 645 (4th Cir.1975). Furthermore, courts generally consider in addition to the size of the class the geographic diversity of class members, the difficulty of identification, and the negative impact on judicial economy if individual suits were required. *Dameron, supra,* 595 F.Supp. at 1408. These factors clearly support certification of a class as redefined.

A common question of law also exists as to all members of the redefined class. Plaintiffs seek to enjoin defendants from interpreting the (b)(1) regulation in such a manner as to exclude local U.S. farmworkers from the requirement that H–2 growers provide them with free housing.

Plaintiffs have also met the requirement of Rule 23(a)(3) that their claims be typical of those of the redefined class. "Factual differences will not necessarily render a claim atypical if the representative's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class and is based on the same legal theory." *Dameron, supra,* 595 F.Supp. at 1408, *citing Smith v. B & O Railroad Co.,* 473 F.Supp. 572, 581 (D.Md. 1979). The claims of both the representative plaintiffs and of the class as redefined all arise from the DOL's interpretation of the regulation in question.

For all these reasons, this Court finds and concludes that plaintiffs have met the requirements of Rule 23(a) and that the class as redefined is an appropriate one for certification under Rule 23(b)(2). Because the defendants have acted on grounds generally applicable to the class as redefined, injunctive and declaratory relief would be appropriate if plaintiffs were to prevail in this case on the merits. Accordingly, plaintiffs' motion for the certification of a class pursuant to Rule 23 will be granted, but the class will be redefined as set forth herein.

### III

*Cross Motions for Summary Judgment*
(a) *Standard of Review*

When reviewing an administrative agency's interpretation of its own regulations, a court is obligated to regard as controlling a reasonable, consistently applied interpretation of an agency's regulations by the agency charged with their enforcement. *Ehlert v. United States,* 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971); *Allen v. Bergland,* 661 F.2d 1001, 1004 (4th Cir.1981). An administra-

tive agency's interpretation of its own regulation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). A reviewing court has an obligation to accord great deference to the interpretation of a statute adopted by the agency charged with its daily administration. This principle is especially true when it is not a statute but an administrative regulation that is the subject of judicial inquiry. *Udall v. Tallman,* 380 U.S. at 16, 85 S.Ct. at 801; *Talley v. Mathews,* 550 F.2d 911, 919 (4th Cir.1977).

#### (b) *Discussion*

After reviewing the memoranda, affidavits and exhibits submitted by the parties, and after hearing oral argument in open court, this Court concludes as a matter of law that the motions for summary judgment of defendants must be granted, and that the motion for summary judgment filed by plaintiffs must be denied. Plaintiffs have failed to meet their burden of proving that the DOL has plainly erred in its interpretation of the (b)(1) regulation.

Defendants have filed herein uncontested affidavits which demonstrate that for over 30 years the DOL has consistently interpreted the regulations at issue here so as not to require H–2 growers to provide free housing for local U.S. workers. The current regulations at 20 C.F.R. Part 655 governing the terms of employment of H–2 growers were promulgated in 1978. The predecessor H–2 regulations, 20 C.F.R. § 602.10 *et seq.,* adopted in 1967, provided as follows:

> The offers to U.S. workers made in accordance with this section and § 602.-10(b) shall:
>
> .        .        .        .        .
>
> (b) Provide for housing for the employees without charge in accordance with the standards issued by the Secretary of Labor as set forth in § 602.9 . . . .

The affidavits submitted by defendants establish that the DOL consistently interpreted the § 602 regulations as not requiring H–2 employers to offer free housing to locally recruited U.S. farmworkers.

When the DOL proposed a revision of the H–2 regulations in 1977, it followed a notice and comment procedure as required under the Administrative Procedure Act, 5 U.S.C. § 553. Throughout this revision process, the DOL never proposed changing its longstanding policy of requiring H–2 growers to provide free housing only to workers recruited from outside the local commuting area. The DOL continued this policy when it promulgated the (b)(1) regulation at issue here. When, in 1981, the DOL published GAL No. 46–81 and specifically articulated its interpretation of the housing which H–2 growers were required to furnish local workers under the (b)(1) regulation, it was doing no more than reiterating a longstanding interpretation of the policy which had been followed. There was never any intent to change pre-existing policy by the promulgation of the (b)(1) regulation. Moreover, the DOL's longstanding interpretation of this regulation and its predecessors is, in the opinion of the Court, a reasonable one.

Plaintiffs' principal argument is that the DOL's interpretation of the (b)(1) regulation is directly contrary to the regulation's plain language. Plaintiffs focus on the sentence in the (b)(1) regulation which provides that "every job offer for U.S. workers must always include the following provisions: (1) The employer will provide the worker with housing without charge to the worker." Plaintiffs argue that this regulation makes no distinction between local and non-local workers and the housing benefits which they should be provided. Thus, plaintiffs contend, the DOL's interpretation of this regulation is arbitrary and capricious.

In arguing as they do, plaintiffs overlook the entire context in which the sentence in question appears. The language relied upon must be read together with other portions of § 655.202(b)(1), as well as with other regulations which govern the hiring of farmworkers by agricultural employers.

When such employers need farmworkers to harvest their crops, they attempt to find employees locally and nationally as well as from abroad. In addition to the regulations at 20 C.F.R. Part 655, Parts 653 and 654 also govern the hiring of U.S. farmworkers by agricultural employers. The regulations at 20 C.F.R. § 653.500 *et seq.* set forth the requirements whereby the DOL's United States Employment Service accepts and handles intrastate and interstate job clearance orders for agricultural workers. Under United States Employment Service regulations appearing at § 653.500 *et seq.*, no local office may place a job order seeking workers to perform agricultural work for intrastate clearance by the Service unless the employer provides "[a]n assurance of the availability of no cost or public housing.... This assurance shall cover the availability of housing for only those workers, and, when applicable, family members who are unable to return to their residence in the same day." 20 C.F.R. § 653.501(d)(2)(xv). Thus, agricultural employers who seek farmworkers only in this country clearly need not provide housing for workers who live within commuting distance of the work site.

The DOL has reasonably determined that it should interpret H-2 housing regulations in conjunction with the related regulations governing similar agricultural employment which appear at 20 C.F.R. Parts 653 and 654. Moreover, such an interpretation of the (b)(1) regulation is supported by the fact that the other sentences of § 655.-202(b)(1) specifically refer to the Part 654 regulations and to the prevailing practice in the area of intended employment as the standards to be met by H-2 employers in furnishing housing to farmworkers. The Part 654 regulations set forth the housing standards which must be met by agricultural employers in order to be able to recruit workers through the clearance system governed by § 653.500 *et seq.*

When these related regulations are considered together with the (b)(1) regulation at issue here, this Court concludes that the DOL has rationally interpreted § 655.-202(b)(1) as not requiring H-2 employers to provide free housing to those local U.S.

workers who are within commuting distance of the work site. This interpretation is not plainly erroneous and will accordingly be upheld by this Court.

Plaintiffs also argue that the DOL's interpretation of the (b)(1) regulation conflicts with the spirit of the H-2 statutes and regulations pertaining to H-2 employment, citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 596, 102 S.Ct. 3260, 3263, 73 L.Ed.2d 995 (1982). Under the statutory and regulatory framework governing the hiring of H-2 workers, United States workers are to be given a preference over foreign workers for jobs that become available within this country. To the extent that foreign workers are brought in, the working conditions of domestic employees are not to be adversely affected, nor are United States workers to be discriminated against in favor of foreign workers. *See Id.* at 596, 102 S.Ct. at 3263.

But neither the *Snapp* case nor any other authority cited by the plaintiffs requires the DOL to give preferential housing benefits to local workers within commuting distance of the job site. Were plaintiffs' interpretation of the (b)(1) regulation to be enforced, a worker within commuting distance would be afforded free housing and would also have the advantage of returning to his own home every evening and on weekends. No such benefits would be enjoyed by foreign workers or by U.S. workers with homes beyond commuting distance, who would necessarily have to reside in the free housing provided.

As mentioned hereinabove, the DOL has interpreted the (b)(1) regulation in the light of the network of related regulations governing the hiring of farmworkers on an intrastate and interstate basis as well as from abroad. Over the many years during which the DOL has consistently interpreted this and related regulations in the manner indicated, it has developed an expertise which incorporates the needs of both the workers and the employers, and which takes into account the purposes of the H-2 program. The DOL has determined that H-2 growers need not provide free housing

for local U.S. workers who live within commuting distance of the work site. In contrast, the interpretation given to the (b)(1) regulation by plaintiffs would require H–2 growers to provide housing even for those local workers who already have housing nearby. This Court does not conclude under the circumstances that the DOL's interpretation was clearly erroneous.

In another case involving H–2 regulations, the Court in *Florida Sugar Cane League v. Usery*, 531 F.2d 299, 303–304 (5th Cir.1976) stated:

> [T]he thrust of the entire statutory-regulatory framework [is to confer] extensive discretionary authority upon the Secretary of Labor. Essentially there is no substantive law for the Secretary to apply in executing the [H–2] certification process.

In upholding the DOL's actions under the H–2 regulations, the Fifth Circuit in *Florida Sugar Cane League* concluded that when an administrative interpretation "obviously incorporates quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme, judges should be particularly reluctant to substitute their personal assessment of the meaning of a regulation for the considered judgment of the agency." *Id.* at 304. The interpretation at issue here incorporates just such expertise. As in the *Florida Sugar Cane League* case, this Court will not substitute any interpretation of the (b)(1) regulation of its own for that of the DOL, particularly since the DOL's interpretation is a reasonable one.

Finally, plaintiffs contend that their position is supported by *NAACP v. Donovan*, 558 F.Supp. 218 (D.D.C.1982) and *Thornton v. Gardenhour Orchards, Inc.*, Case No. 86–JSA–7 (Aug. 11, 1986). These decisions which involved circumstances quite different from those present in this case are distinguishable and do not support the contentions made by plaintiffs here. In *NAACP v. Donovan*, the Court ruled on the DOL's interpretation of an entirely different H–2 regulation. *Thornton v. Gardenhour Orchards, Inc.* involved a complaint by nonlocal workers who were denied housing by an H–2 grower. The issues presented in each of these cases and also the pertinent facts were different from those presented in the immediate suit.

For all these reasons, this Court concludes that the DOL's interpretation of 20 C.F.R. § 655.202(b)(1) should be upheld. Accordingly, the motions for summary judgment of the defendants and of the intervening defendants will be granted, and plaintiffs' motion for summary judgment will be denied. Judgment will be entered in favor of the defendants and the intervening defendants with costs. An appropriate Order will be entered by the Court.